550 So.2d 1267 (1989)
Margel F. BROOKS, et al.
v.
ORLEANS PARISH SCHOOL BOARD.
Victoria M. DAHMES, et al.
v.
ORLEANS PARISH SCHOOL BOARD.
Nos. 88-CA-1813, 88-CA-1814.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1989.
Writ Denied December 1, 1989.
*1268 Charles M. Samuel, III, New Orleans, for plaintiff-appellee.
Franklin V. Endom, Jr., Robert M. Rosenberg, Polack, Rosenberg, Rittenberg & Endom, New Orleans, for defendant-appellant.
Before CIACCIO, WARD and PLOTKIN, JJ.
CIACCIO, Judge.
In this consolidated suit, plaintiffs, seven employees of the defendant school board sued their employer seeking a writ of mandamus, declaratory judgment and the recovery of lost wages and administrative fees. The trial court awarded the lost wages and administrative fees sought by the plaintiffs and denied mandamus relief and a declaratory judgment. Plaintiffs appeal alleging error by the trial court in failing to find that the defendants' actions were violative of their rights under the Louisiana Tenure Laws. La.R.S. 17:461 et seq. Defendants answer the appeal alleging that the trial court's award of lost wages and administrative fees was in error. La.R.S. 17:421, 17:431. We affirm the judgment of the trial court.
The stipulations of counsel and the testimony in this case reflects the following facts:
In 1982 the state legislature enacted the Louisiana Compensatory or Remedial Education Plan. La.R.S. 17:395 et seq. In keeping with this legislation, the state created and funded the Compensatory Education Program which was implemented by the Orleans Parish School Board. The Program had two professional components, the Basic Skills Strategists and Basic Skills Specialists. The Skills Strategists work primarily with teachers and administrators while the Skills Specialists worked directly with the children. These professionals, who performed different functions, each *1269 had as their goal the elevation of basic skills test scores of New Orleans Public School students. The source of funding for the two groups varied in that the salaries of the Specialists were derived from the state legislature by way of annual appropriations while the salaries of the Strategists were secured from purely local sources.
Due to budgetary constraints during the formulation of the budget for the 1985-86 school year the positions of Basic Skills Strategists were abolished. This decision took into consideration the fact that these positions were locally funded programs, 85% of the school budget consisted of personnel salaries and these particular professionals worked primarily with teachers and not with the children.
As a result of the adoption of this budget the Basic Skills Strategists were transferred to the position of Basic Skills Specialists. After the transfer, the personnel continued to receive the same bi-weekly rate of pay and a $20 per pay period pay supplement. Their work year was reduced, however, as they were no longer called upon to work the two weeks preceding the beginning of the school year and the two weeks following the close of the school year.
In 1986, the state legislature eliminated appropriations for the state's remedial program, thereby abolishing the funding for Basic Skill Specialists. As a result of this action, some of those persons serving as Basic Skill Specialists in the Orleans Parish School system were returned to regular teaching positions and, as such, were able to retain their pay supplement. Several others secured non-teaching positions within the school system necessitating a longer work week and a relinquishment of their pay supplement. As a result of these actions plaintiffs filed this suit against their employer.
The two issues presented by this case are as follows: (1) Did the trial court err in finding that plaintiffs' work year and pay supplement were protected under the provisions of Louisiana Revised Statutes Title 17 Section 431? (2) Did the trial court err in dismissing the plaintiffs' claims under the Louisiana Tenure Laws? La.R.S. 17:461 et seq.
Applicability of La.R.S. 17:431
Defendant, Orleans Parish School Board, contends that the trial court erred in finding this statute applied to the instant plaintiffs.
Louisiana Revised Statute, Title 17 Section 431 provides:
Sec. 431. Supervisors, principals and other administrative personnel; salaries
On and after July 29, 1970, no parish or city school system in parishes or cities having a population of over five hundred thousand shall pay to any supervisor, principal, consultant, secretary or any other administrative employee charged with the administrative responsibility of a school or other area of academic concentration or evaluation in such parish or city an annual salary which amounts to less than the amount that was paid by such school system to that employee in the immediately preceding year.
Defendant first argues that the definition of "consultant" used by the trial court is overbroad and in contravention of the rules of statutory construction.
The rules of legislative construction provide that when the language of the law is susceptible of different meaning it must be interpreted as having the meaning that best conforms to the purpose of the law. La.C.C.Art. 10. Additionally, the words of a law must be given their generally prevailing meaning. La.C.C.Art. 11.
In finding this statute applicable to the plaintiffs, employees of the defendant school board, the trial court reasoned as follows:
* * * * * *
The Court finds that the petitioners in both cases are consultants under the statute and are therefore entitled to a salary no less than that received in the school year 1984-1985 with the exception of Victoria Dahmes who is entitled to that salary received in the school year 1983-1984.
*1270 The statute does not have a definition of consultant but Webster's Dictionary defines consultant as "a person who consults another person; a person who gives professional or technical advice as a doctor, lawyer, engineer, editor, etc."

Webster's defines consult as: "to seek information or instruction from; ask advice of; refer to: as in matters of health, consult with a doctor."
* * * * * *
In this case the meaning of the word "consultant" within the confines of this statute was not legislatively defined. The meaning attributed to it by the trial court judge conforms with general rules of legislative interpretation, in that it fosters the general purpose of the statute to protect salaries of enumerated personnel within certain specified school districts. Additionally this definition of "consultant" described by the trial court also gives this word its generally prevailing meaning. See: La.C.C.Arts. 11, 13. For these reasons we find the definition of "consultant" utilized by the trial court in interpreting Louisiana Revised Statute Title 17 Section 431 is neither overbroad nor in derogation of the rules of statutory construction.
Defendants next argue that the evidence adduced at trial does not support the plaintiffs' classification as consultants/administrators. In this regard the school board argues that the Basic Skills Strategists did not supervise, direct or evaluate the work of others and had no budgetary responsibilities normally attributable to a school board administrator. We disagree with this position that the evidence does not support the trial court's findings.
The Orleans Parish Superintendent of Schools, Dr. Everett Williams, was specifically questioned regarding the status of certain school board personnel and documents.
He testified that, in his opinion, school psychologists, evaluation coordinators and instructional specialists were not administrators.
He believed that administrative responsibilities consist of supervising a department and preparing the department's budget. By "supervising", Dr. Williams meant one who gives direction regarding the goals and objectives of the department and carries on the day to day functions. In his opinion a school psychologist is support personnel. He does consult with others such as parents, teachers and doctors, but has no administrative duties.
In Dr. Williams' opinion an evaluation coordinator is one who coordinates with others as to their job function but the job is not a supervisory position. He said that prior to 1960 these people were consultants whose roles were supportive and evaluative but since that time they have become total advocates for the teachers and are no longer an evaluative team. They spend time with the teachers helping them and making recommendations.
Dr. Williams further testified that instructional specialists are people with special skills in a given discipline and are responsible for staff development and not necessarily for evaluation.
With regard to certain school board documents, Dr. Williams also denied their categorization made those who executed them either an administrator or consultant. That is, he testified that the code "03-administrator/consultant" which appeared on some of the documents executed by various plaintiffs were merely a code for pay purposes. He said that it is merely an indication of how people are paid, and, just because they are paid on an administrative salary scale does not mean that they are administrators. With regard to the evaluation form (Brooks # 14) and the request to attend conference form (Brooks # 16), each of which forms indicated that they referred to administrators, Dr. Williams testified that plaintiffs should have known that they were not carrying out administrative duties even though they filled out these forms. According to Dr. Williams, neither an assessment consultant nor a language and hearing consultant are considered "consultants" today. (Brooks # 1, Item 4.)
The testimony of Dr. Williams which denied the plaintiffs' status as administrators *1271 and/or consultants was refuted by the various plaintiffs who testified at trial.
Margel Brooks was an assessment consultant whose duties consisted of isolating children's problems, and the evaluation and determination of whether special education services are helpful. She also coordinated those services for the child. She stated that her administrative duties were to manage, design and direct student evaluation and to consult with other team members and teachers. She said she was told by 2 school board employees (i.e., Jack Fontana and Lorraine Crovetto) that she was an administrative personnel.
Diana Dunlap and Elaine Johnson, school psychologists and evaluation coordinators, manage, direct, and execute evaluation of students, perform departmental reports on school level committees and administer psychological tests necessary for educational planning. They also perform in service training with teachers and consult with them and with principals. Their administrative duties consist of being an evaluation coordinator wherein they direct execution of evaluations, assure all components of the evaluation and determine who is needed to conduct the evaluation, arrange for staffers and staff the case. They consult directly with those who seek or need advice. If the advice is outside their expertise they will seek it out and bring the information back to their group of three team members.
As appraisal coordinators, Ms. Dunlap and Ms. Johnson convey information from the director to members of the section, read and monitor reports for legal compliance and monitor the progress of the department.
Avis Price is a social worker. Her functions consist of being an evaluation coordinator, and school psychology representative. As an evaluator she calls and interviews parents, teachers and principals as well as evaluates children and does assessment consulting. As an evaluation coordinator, she directs and manages the evaluation process, consults with the team members and attends to staffing needs. She stated that she was led to believe she was an administrative employee because of the job description which designated her as such and her duties had not changed. Her administrative duties consisted of coordinating, evaluating, and serving as a liason between the school and parents, their department and that of support appraisal services which gives adaptive behavior assessments. She classifies this as administrative because it is part of the evaluation process.
Cheryl Weinberg is a speech and language consultant who consults with other team members to determine who will evaluate and design programs to evaluate children at all levels, monitor all school-based speech person's reports and check compliance. She testified that she was told when she was hired that her job was administrative. As such, she had longer days, accrued vacation and sick leave and a prohibition against union membership. Her duties also involve consultation with children and teachers in order to develop an understanding of hearing and speech problems, suggest appropriate strategy, consult with speech and language personnel of the hearing impaired and language evaluation. She consults with the speech therapists in order to explain and document their activities.
Cheryl Frilot is an adaptive physical education coordinator who engages in creating specialized or modified physical education for students who don't function normally. In this regard she administers tests, consults with team members regarding full or partial evaluation screening and staffing. She determines the tests to be administered, interprets the results and decides the services required. She also consults with other team members, determines if the services have been provided, performs follow-ups and monitors the cases. She is also eligible to serve as an evaluation coordinator. She consults with other team members, doctors, teachers and principals about particular students.
Victoria Dahmes has been employed with the defendant since 1973 holding certificates in elementary education, as a principal, supervisor of instruction and of student teachers, a school counselor and reading *1272 specialist. As a Basic Skills Strategist she was responsible for staff development of the certification of teacher employees, staff development for principals, supervisors, reading specialists and basic skill specialists as well as serving as a curriculum resource person. Her consulting duties consisted of consulting with principals, assisting with remediation and academic plans for upgrading reading and mathematics, acting as a curriculum expert for the faculty and assisting in the utilization of curriculum materials. She was also involved in developing activities for principals and staff, analyzing test scores and reviewing specific school needs. Her evaluation duties involved suggesting curriculum to principals, consulting with staff regarding teaching methods, and serving on personnel selection committees for compensatory education teachers and basic skill specialists. The testified that her supervisory duties involved making recomendations to teachers and suggesting follow up activities, as well as conducting service training for teachers.[1]
The various plaintiffs also identified numerous documents which were involved in their employment and utilized by the defendant which clearly references the administrative/consultant capacity of those who execute them.
From this representative depiction of the testimony of the various plaintiffs in this suit it is clear that the record supports the trial court's finding that the plaintiffs were administrators/consultants within the meaning of the language of Louisiana Revised Statute Title 17 Section 431 and we find no manifest error in this regard. Arceneaux v. Dominque, 365 So.2d 1330 (La., 1978).
The School Board alleges that the statute in question is not applicable to the present plaintiffs because it does not protect employees who have been subjected to a reduction in the work year. Rather, they argue that this statute was designed to protect certain classes of employees from reduction in their annual salaries for doing the same work.
We do not find this argument persuasive. The clear language of the statute provides: "no parish school system ... shall pay ... an annual salary which amounts to less than the amount that was paid by such school system to that employee in the immediately preceding year." No language is contained in this statute which would allow the school board to unilaterally effect a reduction in salary by reducing the employee's work year. If the statute makes no provision for a reduction in pay because of a reduction in the work year due to fiscal constraints, this problem is properly addressed to the Legislature, not to this Court.
We do not imply, by this finding, that La.R.S. 17:431 prohibits layoffs or reductions in force because of fiscal restraints. That matter is not before us in this case and we express no opinion regarding it.
For the reasons stated we find that the trial court did not err in finding plaintiffs' work year and pay supplement were protected under the provisions of Louisiana Revised Statute Title 17 Section 431.
Finally, defendants contend that the trial court erred in computing the amounts due each plaintiff. They suggest that the court should have computed a reduction from each plaintiff's annual salary less offsets.
The record reflects that the parties stipulated to the time worked and pay loss of the various plaintiffs. Based upon that information the trial court awarded each plaintiff a sum representing their lost weeks of pay less any credit due as a result of offset.
Since one of the distinguishing factors of plaintiffs' employment was the fact that as Basic Skills Strategists they were required to work 44 weeks and because they were paid biweekly, the court correctly computed their loss of pay on the weekly rather than annual basis. As such, this argument lacks merit.
*1273 Applicability of Louisiana Tenure Law. La.R.S. 17:441
Plaintiffs argue that the reduction in work year and administrative pay supplement of the Basic Skill Strategists by the defendant school board violated the Louisiana Tenure Law, (La.R.S. 17:441) and plaintiffs' constitutional rights. La. Const. Art. 1, Sec. 3 (1974). Plaintiffs allege that they were removed from office for economic reasons which is not a ground countenanced by the statute and that their removal was in derogation of the safeguards enumerated in the statute. Insofar as the trial court held to the contrary, plaintiffs urge this was error.
Louisiana Tenure Law provides for removal from office of permanent teachers only on specific grounds and with prescribed constitutional safeguards. The statute provides in pertinent part:
La.R.S. 17 Sec. 462. Permanent teachers; causes for removal; procedure
A. A permanent teacher shall not be removed from office except on written and signed charges of immorality, or of wilful neglect of duty, or of incompetency, or of being a member of or of contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the State of Louisiana, and then only if found guilty after a hearing by the Orleans Parish School Board. (Emphasis Supplied)
The "removal from office" provision applies to demotion or reduction of salary as well as to discharge or dismissal. Palone v. Jefferson Parish School Board, 306 So.2d 679 (La., 1975); State ex rel McNeal v. Avoyelles Parish School Board, 199 La. 859, 7 So.2d 165 (1942). The statute also applies to protect a permanent teacher from transfer to a position of lesser status, rank or salary. Pardue v. Livingston Parish School Board, 251 So.2d 833 (La.App., 1st Cir.1971).
In this case the trial court made the following finding in dismissing plaintiffs' claims under the Louisiana Tenure Law:
Additionally, the pleadings do not refer to loss of position according to equal rank, status or dignity. Petitioners are asserting this at trial but the Court denies this relief since there has been no showing that the petitioners are entitled to relief at this time. [Reasons for Judgment, P. 3].
These findings are fully supported by the record and we find no abuse of the discretion of the trial judge in this regard. Accordingly, this assignment of error lacks merit.
For the reasons assigned the judgment of the trial court is affirmed. Parties to this litigation shall bear their respective costs of appeal.
AFFIRMED.
NOTES
[1] This testimony is illustrative of the testimony of all plaintiffs regarding their administrative /consulting duties as Basic Skills Strategists.