h MURRAY, Judge.
The Orleans Parish School Board appeals a judgment in favor of its employee Paul Trouard, awarding to Mm back wages of $14,764.28 for the Board’s having reduced his pay in violation of La. R.S. 17:431. The judgment also ordered that Mr. Trouard be reinstated to salary level 14-7, with appropriate pay and benefits, and that Ms employment records be adjusted to reflect the pay and pay grade he would have acMeved had he been promoted in accordance with the judgment. We reverse.
FACTS AND PROCEEDINGS BELOW
Paul Trouard has been employed by the School Board in various accounting positions since 1971. He became a Budget Analyst in 1979, and by July 1,1989, he had attained the Mghest salary level for that job, which is grade-12, step-7.[1] From August 29 to November 11, 1988, Mr. Trouard served as In-terimjaAccounting Manager, a grade-14 position. At the end of that period he returned to Ms regular position and salary.
In July 1989, the woman serving as Accounting Manager, second-in-command to the Director of the Finance Department, left the School Board’s employ. Mr. Trouard once again accepted appointment as Interim Accounting Manager effective July 17,1989 at a grade 14, step-4 salary level. He testified that he knew when he accepted tMs appointment that there was no guarantee that he would be selected as permanent Accounting Manager because appointment to tMs position required competitive advertising. However, he knew that if he was not given the permanent position he could not be assigned to a lower paying position than grade-12, step-7, because he was tenured at that level.
Testimony at trial established that three responsibilities assumed by the previous Accounting Manager, accounts payable, payroll, and the student activity fund, were assigned to others when, or shortly after, Mr. Trouard accepted the Mterim position. The School Board’s two witnesses stated that this reallocation of duties was in conjunction with an overall reorganization of the Board’s financial services division that occurred between the end of 1989 and late 1990. The oMy other change identified as having been made as part of the reorganization was the renaming of the Director of Finance.[2] All witnesses agreed that Mr. Trouard’s functions and duties were the same from late 1989, shortly *526 after he assumed the interim position, to the date of trial in December 1995.
IsThe permanent Accounting Manager’s job was finally advertised in February 1991.[3] The position was downgraded at that time to grade-13. Mr. Trouard noted the position’s downgrade, and verbally complained to several of his superiors. He testified that after almost two years in the interim position, he assumed that he would be selected for the permanent job. He said that he was never given any “official” explanation for the change in the salary level. However, the Board’s Comptroller and Chief Financial Officer both testified that they explained to Mr. Trouard that, unlike his predecessor, he was not responsible for accounts payable, payroll, and student activity funds.
Notwithstanding the downgrade, Mr. Trouard applied for the position as permanent Accounting Manager. After being interviewed in competition with approximately sixteen other applicants, he was told that he had been selected for the job but he had to sign an acknowledgment that his pay might be reduced or else his name would be withdrawn from candidacy.[4] Faced with a choice between returning to his prior grade-12 position, or resigning when he was only two months away from qualifying for full pension benefits, Mr. Trouard testified that he signed the acknowledgement under duress.
Mr. Trouard subsequently was confirmed as the new Accounting Manager by the School Board, and effective May 14,1991, his bi-weekly salary was reduced from $1,511.31 for grade-14, step-5, to $1,472.31 for grade-13, step-7. UBecause step-7 places Mr. Trouard at the highest salary level for a grade-13 position, his pay increases only when across-the-board raises for all personnel are approved by the School Board. As a result of these across-the-board increases, Mr. Trouard’s actual wages have risen each year from 1990 through 1993, whether on a calendar or fiscal year basis. However, he consistently has earned less than he would have if he had not been downgraded from the grade-14 salary level, and he had been granted his automatic step increases. Mr. Trouard testified that had the Accounting Manager’s position remained a grade-14 job, he would have attained step-6 in July 1991, and step-7, the highest level at that grade, in July 1992.
Mr. Trouard filed this suit on May 16, 1994, alleging that the School Board’s actions had violated La. R.S. 17:431, which prohibits a reduction in his salary, and that the violation was continuous from May 14,1991 to the present. He sought retroactive reinstatement to salary grade-14, full back pay with legal interest from May 14, 1991, as well as restoration of all benefits he would have otherwise accrued, including the step increases to bring him to the current salary level of a grade-14, step-7, and all other equitable relief. After a bench trial in December 1995, judgment was rendered in Mr. Trouard’s favor, and this appeal followed.
DISCUSSION
The trial court found that the School Board’s appointment of Mr. Trouard to the downgraded position of Accounting Manager was prohibited by Revised Statute 17:431, which provides in pertinent part:
IsOn and after July 29,1970, no parish or city school system in parishes or cities [of a certain size[5]] shall pay to any supervisor, *527 principal, consultant, secretary or any other administrative employee charged with the administrative responsibility of a school or other area of academic concentration or evaluation in such parish or city an annual salary which amounts to less than the amount that was paid by such school system to that employee in the immediately preceding year.
This court has previously stated that “the general purpose of the statute [is] to protect salaries of enumerated personnel within certain specified school districts,” including Orleans Parish. Brooks v. Orleans Parish School Bd., 550 So.2d 1267, 1270 (La.App. 4th Cir.), writ denied, 553 So.2d 466 (La.1989). Mr. Trouard asserts that under this interpretation of R.S. 17:431, the trial court correctly restored him to all pay and benefits he would have received had this provision not been violated.
In Brooks, this court determined that R.S. 17:431 prohibited pay reductions resulting from the elimination of a pay supplement and from the reduction of the work-year for particular employees who had been reassigned when a special program was terminated. The personnel actions taken in that case, which were found to be violative of the statute, resulted from the unilateral and involuntary termination of these employees’ original positions. In contrast, Mr. Trouard voluntarily accepted what he knew to be a temporary promotion, with the full understanding that he could be returned, at any time, to his lower-paying job of Budget Analyst at grade-12, step-7. When the permanent Accounting Manager’s [(¡vacancy was advertised as a downgraded position, he chose to apply for and accept the job. Mr. Trouard’s reb-anee on Brooks is misplaced.
The essence of Mr. Trouard’s claim for “restoration” of pay and benefits is that he is permanently entitled to the status of grade-14, the salary level of the interim position. This claim is not one for salary protection; it is a claim for tenure.[6] Guillory v. Orleans Parish School Bd., 597 So.2d 96, 98 (La.App. 4th Cir.1992). Tenure for non-teaching Orleans Parish School Board employees is governed by R.S. 17:525 A, which provides that a three-year probationary period must be served before permanent status in a higher-paying position is attained. Mr. Trouard had tenure and was protected in his grade-12 job as Budget Analyst. However, he had served only one year and ten months as Interim Accounting Manager at grade-14, when he accepted the permanent position, which was advertised at grade-13. Therefore, he did not have tenure at grade-14. Consequently, no tenure violation occurred.
Mr. Trouard asserts, however, that because he did not know of R.S. 17:431, or of any statutory protection of his salary, his acceptance of the downgraded position cannot be considered voluntary, nor can it represent a valid waiver of his rights under that provision. As explained above, 17:431 provides no protection under these circumstances; Mr. Trouard had no rights to waive, either knowingly or unknowingly, under this statute. In addition, the fact that the School Board presented him with choices — first, the offer of the interim position, and then the option of accepting the downgraded Accounting Manager’s job or of returning to his former grade-12 position — does not constitute duress nor render Mr. |7Trouard’s decision involuntary. See, e.g., Williams v. Lafayette Parish School Bd., 533 So.2d 1359, 1361-62 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1237-38 (La.1989) (resignation resulting from informing a probationary teacher that he would receive an unfavorable recommendation if he did not resign is not involuntary or coerced).
Finally, we must reject Mr. Trouard’s argument that his employer’s actions should be viewed as “a devious skirting of the protection” afforded by law to School Board employees. It is true that there was no change in Mr. Trouard’s duties when he was converted from the grade-14 Interim Ae- *528 counting Manager position to the grade-13 permanent position. However, the evidence establishes that, after the departure of the prior incumbent, the School Board restructured the job description as well as its ranking among the hierarchy of positions before advertising the vacancy. Mr. Trouard admitted that, almost from the inception of his interim appointment, his duties did not include three significant functions that had been performed by his predecessor in the permanent position. Furthermore, there was virtually no evidence that the downgrade of the Accounting Manager’s position was motivated by discriminatory intent or personal animus towards Mr. Trouard.[7] It was proven that the downgrade was a legitimate reflection of the reduced functions Mr. Trouard performed in comparison to his predecessor, and not an attempt by the Board to avoid its legal obligations or violate its employees’ rights.
For these reasons, we find that the trial court erred as a matter of law in rendering judgment in favor of Mr. Trouard, and pre-termit discussion of |8defendant’s additional assignments of error. The judgment below is hereby reversed, with each party to bear its own costs of this appeal.
REVERSED AND RENDERED.

. The School Board's Administrative and Professional Positions are classified from grade 8 through grade 16, with seven salary steps within each grade.

. The Director of Finance became the Comptroller. There also is some testimony that suggests that the position of Executive Director of Financial Services was retitled to Chief Financial Officer. The School Board, however, made no attempt to delineate the organizational structure either before or after this reorganization.

. There is no explanation in the record for the delay in advertising and filling the permanent position, other than the testimony of Anthony Stoltz (erroneously named as Anthony Stokes in the trial transcript), the Board's Comptroller since November 1990. Mr. Stoltz testified that he was responsible for initiating the paperwork, and that he did so when he felt the time was proper.

. This typed memorandum dated April 17, 1991, admitted as exhibit P-6, originally stated "you will receive a cut in pay” if selected. Mr. Trouard testified that this memo had been altered by hand to say "you may receive a cut in pay” before he signed it.

.By 1991 La. Acts 428 § 1, "four hundred seventy-five thousand" was substituted for "five hundred thousand” as the population level at which this provision became applicable. The amendment was effective July 12, 1991, when it was signed by the governor. 1991 La. Acts 428 § 2. Because we determine that this statute does not prohibit the action at issue here, we pretermit the defendant's argument that, for some unspecified period of time between 1990 and July 1991, the School Board was not gov- *527 emed by this law because the population in Orleans Parish had fallen below five hundred thousand.

. Plaintiff asserts that because the defendant did not advance this argument below, this court cannot consider the applicability and effect of the tenure laws on appeal. However, the School Board's Pre-Trial Memorandum, at page 6, expressly raised this issue, with proper citation to La. R.S. 17:521 et seq.

. Mr. Trouard testified only that during "a heated argument" shortly before the permanent job was advertised, the Director of Finance stated he could “make sure” Mr. Trouard was not selected for the position. This obviously was an empty threat as Mr. Trouard, in fact, was selected and paid at a higher grade level than his tenured position as a Budget Analyst.