617 So.2d 187 (1993)
Annie ROBERTS, Plaintiff-Appellant,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellee.
No. 92-602.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Writ Denied June 18, 1993.
*188 Brian D. Cespiva, Alexandria, for Annie Roberts.
Raymond L. Brown Jr. and Field Vernon Gremillion, III, Alexandria, for Rapides Parish School Bd.
Before GUIDRY, KNOLL and WOODARD, JJ.
GUIDRY, Judge.
Annie Roberts, a tenured teacher, appeals the trial court's affirmation of the Rapides Parish School Board's decision to suspend her without pay for the first semester of the 1989-90 school year and place her on probation for the remainder of the school year. She was charged with and found guilty by the School Board of willful neglect of duty and incompetence for showing "Child's Play", an "R" (restricted) rated movie, to her seventh grade reading class. On appeal of the School Board's decision, pursuant to the Louisiana Teachers Tenure Act, La. R.S. 17:441 et seq., the district court held that the School Board's decision was based upon substantial evidence which provided a rational basis for the resulting suspension and probation. For the following reasons, we affirm.

FACTS
The incident which led to these proceedings occurred on May 19, 1989. On that date, Roberts showed a portion of "Child's Play" to her second hour reading class at Tioga Junior High School. The movie is about a doll named "Chucky" which becomes demonically possessed by the spirit of a maniacal killer. Its "R" rating is attributable to its violent nature and offensive language. Upon discovering that Roberts showed the movie to her class, Winston Welch, the principal at Tioga Junior *189 High School, conferred with Roberts and conducted an investigation of the incident. Based on the results of his investigation, Welch recommended to the Rapides Parish Superintendent of Schools, Allen Nichols, that Roberts be dismissed. Nichols, by letter to the School Board dated June 13, 1989, concurred in Welch's recommendation that Roberts be dismissed for "willful neglect of duty and incompetence" for showing a movie with "profanity and lewd language" without previewing it.
At an August 7, 1989 hearing, the School Board viewed the movie in question. Roberts objected to the showing of a copy of the movie without proof that the videotape shown to the School Board was the same one Roberts used in her class. Specifically, Roberts argued that the videotape shown constituted hearsay because it was not the exact same videotape allegedly shown to the class. After discussion, the School Board decided to view the videotape copy provided by the superintendent.
Deann Chelette and Chris Reynolds, Roberts' students, identified the movie shown to the School Board as the same movie they witnessed in class on May 19, 1989. Chelette testified that Roberts showed movies every Friday. Reynolds stated that the movie was started at the beginning of class and stopped right before the bell rang, lasting approximately 45 minutes. He further testified that there was no class discussion either before or after the movie and, in his view, it was "recreational" in nature. The class watched the movie to the point at which the doll cursed the lady after having killed her friend. On cross-examination, both Chelette and Reynolds stated that Roberts is a good teacher who successfully motivates her students to learn. They had no complaints about her teaching ability.
In her defense, Roberts testified that, in her 32 years of experience with the Rapides Parish school system, no disciplinary action had ever been taken against her. She customarily showed movies to her class and Principal Welch was aware of this practice. Roberts learned of the movie from an anonymous phone call. Her curiosity was piqued when she discovered that a colleague, Mr. Jones, had been reprimanded for showing it to his class. She acquired the tape shown in her class from Mickey Basco, a student, who had also supplied Jones with the film. She admitted that she did not preview the movie before watching it in class. She denied that the copy she showed her class had the foul language contained in the copy shown to the School Board. It was Roberts' intent in reviewing "Child's Play" to determine why the other teacher should not have shown it. However, Roberts took no steps to prevent the children from viewing it and, in fact, she positioned the television in the front of the classroom facing her students.
Roberts further admitted that the showing of "Child's Play" was not part of her lesson plan on the day in question. At the time, her students were supposed to be engaged in a vocabulary word search using various magazines and newspapers. She stated that she was not aware of the "R" rating and claimed that she stopped the videotape after she heard the mother call the doll a "bastard". There was no indication on the videocassette cartridge of the film's rating. If she had been aware of the "R" rating, Roberts stated she would not have shown it to her seventh graders. She was also unaware of any official School Board policy concerning the showing of movies but, if the School Board would have had a policy in effect, she would have followed it. In conclusion, Roberts felt that, by showing this movie, she used every minute of class time for instruction as prescribed by the School Board.
Principal Welch identified the movie shown to the School Board as the one he reviewed in his office after acquiring it from Jones. He returned that copy to its owner, Mickey Basco's mother, when she insisted that he do so. When he discovered that Roberts had also shown "Child's Play", Welch investigated the incident. According to Welch, Roberts told him she acquired the tape from Basco to preview it to determine if it was bad or not. In Welch's view, there was no educational purpose or benefit to "previewing" the film in front of the class and, after viewing the *190 film, he "was a little shocked". He was unaware of how or if Roberts tied the showing of "Child's Play" in with her reading class lesson plans. Although the film's rating was not determinable from the videocassette cartridge which he viewed, Welch called a local video store to confirm the "R" rating. Welch felt that, since he recommended dismissal in Jones' case for the same alleged transgression, similar disciplinary action was proper against Roberts.
Superintendent Nichols testified that, although the school system has no policy which prohibits the showing of movies to students, Roberts violated the policy requiring teachers to use every minute of the schoolday for instruction. Roberts admitted that she was aware, prior to showing the movie, of parental concerns and of the fact that Jones was reprimanded for showing the movie to his class. Nichols was most upset with the language used in the movie and the lack of a relationship between the movie and the lesson plan.
Roberts appealed to the district court, which affirmed the School Board's decision. She now appeals that judgment to this court and assigns the following four errors:
1) The district court erred in upholding the Board's finding of guilt and suspension because neither was based upon "substantial evidence";
2) The district court erred in failing to find that the movie shown to the Board was inadmissible hearsay;
3) The district court erred in finding the School Board warranted in taking action against Roberts pursuant to an unenacted policy; and,
4) The district court erred in finding that the School Board's video policy, which was promulgated shortly after this hearing, was not admissible for purposes of this appeal.
Roberts also requests on appeal that we award her damages and attorney fees incurred in the prosecution of this appeal. Because we conclude that the trial court's judgment was not erroneous, this issue is rendered moot. In any event, these separate elements of recovery are not authorized by La.R.S. 17:443.

OPINION

Assignment No. 1: Sufficiency of Evidence
In Howell v. Winn Parish School Board, 332 So.2d 822, 825 (La.1976), the Louisiana Supreme Court enunciated the standard of judicial review of a School Board's action under the Louisiana Teachers Tenure Act as follows:
... whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion.... this Court will limit its inquiry to a determination of whether the action of the school board was (1) in accordance with the authority and formalities of the Louisiana Teachers Tenure Act, and (2) supported by substantial evidence, or conversely, an arbitrary decision and thus an abuse of discretion. (citations omitted).
See also Meyers v. Sabine Parish School Board, 499 So.2d 690 (La.App. 3rd Cir. 1986), writ denied, 501 So.2d 236 (La.1987).
After thoroughly reviewing the record of the School Board's hearing, we conclude that the district court did not err in determining that the School Board's action was rationally based on substantial evidence. Roberts admitted that she showed the "R" rated movie, which contained violence and foul language, within the hearing and view of her seventh graders. Two students identified the movie as the same one they saw in class on May 19, 1989. The foul language and violent scenes documented in the record provide a rational basis for the conclusion that Roberts willfully neglected her duty and was incompetent in showing the movie to seventh graders. We can perceive of no educational value of this movie to a reading class. Roberts' explanation, that she was previewing the movie, is not sufficient to exculpate her from guilt in this matter. She clearly *191 derogated from her responsibility as a teacher. Accordingly, the trial court did not err in finding the School Board's action was supported by substantial evidence.

Assignment No. 2: Admissibility of the "Child's Play" Videotape
Roberts argues that, because the videotape cassette shown to the School Board was admittedly not the same copy shown to the students, it was hearsay and thus inadmissible. She further claims that a proper foundation for admission of the copy was not laid by the School Board's attorney.
The rules of the Louisiana Code of Evidence are not applicable to proceedings before a school board conducted pursuant to the Louisiana Teachers Tenure Act. La. R.S. 17:443; LCE art. 1101. Therefore, the strict rules of authentication and hearsay exclusion contained in the Code of Evidence do not apply.
In any event, the videotape shown to the School Board was identified by the two students as being the same movie shown in class. Principal Welch also identified the movie as the same movie he viewed in his office which was on Mickey Basco's videotape. Superintendent Nichols testified that he was unaware of the location of the actual videotape Roberts showed the students. He further testified that Tommy Smith, the director of secondary education, secured the videotape copy shown to the School Board from a local video store. Roberts, on the other hand, asserted that the videotape viewed by the School Board contained much more foul language than the one viewed by the class.
We conclude that the trial court correctly found that the videotape shown to the School Board did not constitute inadmissible hearsay. The videotape was sufficiently identified as being the same movie as the one shown to the students. Given the transient nature of videocassettes and the ease with which one can be erased, it is understandable that the School Board was unable to locate and secure the exact videocassete shown to the students by Roberts. The copy secured by the School Board was admissible.

Assignments No. 3 and 4: The School Board's Movie Policy
Roberts asserts that the School Board was unwarranted in taking action pursuant to an unpromulgated movie policy. She also argues that the movie policy which was enacted subsequent to her hearing was properly admissible on appeal to the trial court, contrary to the trial court's decision to exclude such evidence.
It is undisputed that, at the time of the alleged transgression, no specific written or oral School Board policy existed covering the showing of movies in the classroom. However, Roberts was not prosecuted under this as yet to be enacted policy. The lack of an official policy, however, does not relieve the teacher of a general obligation to screen the content of materials prior to exposing students to them. We conclude that a teacher need not have violated a specific School Board policy in order to be found guilty of willful neglect of duty. In the instant case, it is sufficient that she failed to screen the offensive movie prior to showing it and allowed it to be shown for the entire period.
On the issue of the admissibility of the School Board's subsequently enacted movie policy, we conclude that the policy was irrelevant to the district court's task of determining whether the School Board's decision was rationally based upon substantial evidence. The record indicates that, at the time of the hearing, the School Board's policy was not in existence and thus could not have been considered by the School Board in determining the disposition of Roberts' case. Generally, on appeal to the trial court, the dismissed teacher is allowed to present non-duplicative evidence that is otherwise admissible which he/she was not allowed to present to the School Board. Lewis v. East Feliciana Parish School Board, 372 So.2d 649 (La.App. 1st Cir. 1979), writ denied, 375 So.2d 959 (La.1979), appeal after remand, 452 So.2d 1275 (La. App. 1st Cir.1984), writ denied, 458 So.2d 123 (La.1984). In the instant matter, because the School Board did not and could not have considered its later-enacted movie *192 policy in disciplining Roberts, it was irrelevant to the district court's determination of whether the School Board's actions were proper.

DECREE
For the above and foregoing reasons, the judgment of the district court is affirmed. All costs of these proceedings at the trial level and on appeal are to be borne by plaintiff-appellant, Annie Roberts.
AFFIRMED.