628 So.2d 1317 (1993)
James C. SPURGER, Plaintiff-Appellee,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 93-275.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
*1318 Gregory Scott Erwin, Alexandria, for James C. Spurger.
Raymond L. Brown Jr., Alexandria, for Rapides Parish School Bd.
Before GUIDRY, KNOLL and SAUNDERS, JJ.
GUIDRY, Judge.
Defendant, the Rapides Parish School Board, appeals the trial court's reversal of the Board's decision to suspend plaintiff, James Spurger, without pay for the first semester of the 1989-90 school year and place him on probation for the second semester of the school year. Spurger was charged under the Louisiana Teachers' Tenure Act, La.R.S. 17:441 et seq., with willful neglect of duty and incompetence for showing "Boss", a "PG" rated (parental guidance suggested) movie containing repeated racial epithets and stereotypes, to his class of special education students at Tioga High School. In reversing the Board's decision, the trial judge held that the Board failed to comply with procedural requirements to which Spurger was entitled. Particularly, the court found fault in the Board's failure to afford Spurger remediation procedures under La.R.S. 17:391.1 et seq. for his alleged incompetence and its vote to suspend Spurger without specifically identifying which alleged violation or violations formed the basis of its decision.
For the following reasons, we reverse the trial court judgment and reinstate the Board's decision.

*1319 FACTS

The incident in question occurred on either February 23, 1989 or March 2, 1989. The actual date of the showing of "Boss" is unclear from the record. However, it is undisputed that the movie was shown by Spurger to special education students, aged 15 to 19, during an "Arts and Crafts" class. The class was made up of 14 students, 11 of whom were black and the remaining three of whom were white.
At the August 7, 1989 School Board hearing, the Board members viewed the movie to the point at which Spurger ceased showing it to his class. "Boss" is a western which depicts racial stereotypes, some of which are reversed in the movie. It is the story of a black sheriff, the Boss, in a nearly all-white frontier town. Throughout the film, the white town leaders, especially the mayor, attempt to depict the sheriff and the black race in general as immoral, ignorant and corrupt. One stereotype, that a black man's sole intent in speaking to a white woman is to molest her, is also exploited. Rumors fly amongst the townspeople when the sheriff and his deputy are seen conversing with a white woman. However, in a reversal of stereotypes, it is the white mayor who is later revealed to be immoral and sexually deviant when he watches a black woman bathe from a window. Soon thereafter, the mayor attempts to sexually attack her.
The most offensive characteristic of "Boss" is the fact that the word "nigger" is spoken 37 times in the movie. It is the primary tool used by the filmmakers to depict the black race in a negative light as ignorant second-class citizens. Additionally, the movie contains a very brief nude scene (when the woman gets into the bath tub), and the words "shit" and "hot damn" are each spoken once.
Spurger showed "Boss" to his second period class on a Friday morning. His teacher's aide, Zelma Johnson, testified at the Board hearing that Spurger did not discuss showing "Boss" with her prior thereto. There was no explanation to the class of how the movie fit into the lesson plan for the day. Additionally, no class discussion was held before or after the showing. Spurger later commented that he showed the movie in an effort to stop his black students from using "nigger" when referring to each other. At the point during the movie where the woman begins to bathe, Johnson left the room and reported Spurger's activity to the assistant principal, Elgee W. Gorrell. She further stated that there was no problem with the use of the word "nigger" in the class. It would "slip out" occasionally, but she did not consider it to be a serious problem. She did, however, institute a policy of atonement whereby those students caught using the word in class would have to do push-ups. If the offending student refused to comply with the policy, he or she would be sent to Assistant Principal Gorrell who would then enforce the punishment.
Gorrell identified the movie shown to the Board as the same movie shown in Spurger's class that morning. He testified that, when informed by Johnson of Spurger's showing of "Boss" to the special education class, he proceeded immediately to Spurger's classroom. He viewed the movie for a short period of time from the hallway through a small window in the door before entering the classroom. After a few moments of viewing and hearing the movie in the classroom, he became upset and angry over the use of the word "nigger". Gorrell instructed Spurger to stop the film, and Spurger immediately complied. On cross-examination, Gorrell acknowledged the existence of Johnson's atonement policy for use of the word "nigger" in the class and his role in enforcing said policy.
Richard Bardwell, the Tioga High School principal, stated at the hearing that he had a conference with Spurger on the following Monday morning. At that meeting, Spurger admitted showing the movie to his class. He was verbally reprimanded by Bardwell but no further disciplinary action was taken. Bardwell decided that the Arts and Crafts curriculum was not meeting the students' needs due to a lack of facilities and resources. He ordered Spurger to immediately change the subject being taught to geography.
*1320 At the end of the school year, Spurger was rated "satisfactory" in every applicable category by Bardwell on his comprehensive teacher evaluation. Two weeks later, Bardwell wrote a letter to Rapides Parish Superintendent of Schools Allen Nichols detailing the prior transgression and recommending the dismissal of Spurger for violation of "all ethical and legal standards established by the School Board". He acknowledged that the contents of this letter conflicted with the results of his evaluation of Spurger. He explained this discrepancy by stating that, in the meantime, he had become aware that the Board was seriously considering disciplinary action against two teachers at Tioga Junior High School for showing their classes "Child's Play", an "R" rated (restricted) movie about the demonic possession of a doll. According to Bardwell, it became apparent to him that the Board "was gonna [sic] take a stand" on the showing of previously unauthorized movies in the classroom. He felt it was necessary to inform Superintendent Nichols of Spurger's showing of this offensive movie and to recommend that disciplinary action be taken.
Superintendent Nichols also testified at the Board hearing. He initiated the hearing by bringing formal written charges against Spurger and recommending his dismissal. In his opinion, there was absolutely no educational benefit in the movie. He further stated that to show such a movie to special education students to "kill a class period" was willful neglect of duty and incompetence. Nichols also explained that, instead of showing this movie, Spurger should have concentrated on the approved Arts and Crafts curriculum, especially since special education students generally require longer instructional time to learn the same amount of information as mainstream students. In other words, a teacher has much less time to waste in a special education setting.
Spurger testified in his own defense at the Board hearing. He showed the film, which he characterized as an example of bigotry, to help his black students understand that calling each other "nigger" is undesireable and socially unacceptable. He had previewed the movie the night before at home and was aware of the presence of the numerous racial slurs, the minor obscenity and the brief nude scene. His plan was to show "Boss" as a prelude to a discussion of racial bigotry and its ill effects. He was unable to conduct this planned discussion because the class period ended before the movie was completed. He was not allowed to have the discussion on the following Monday because of the change in subject matter to social studies (geography). Spurger further testified that he usually showed four movies a year as a reward to his students for good work. He explained that the movies he usually shows have some educational value.

ACTIONS OF THE BOARD AND THE TRIAL COURT
Based on the foregoing testimony and evidence, the Board voted to suspend Spurger without pay for one semester and place him on probation for the following semester. He appealed to the district court which, on November 12, 1992, rendered written reasons for judgment reversing the Board's decision and reinstating Spurger as a tenured teacher with $12,735.78 in back pay plus legal interest. The trial judge's ruling was based on the fact that the Board, after charging Spurger with incompetence, failed to provide remediation procedures under La.R.S. 17:391.5 before bringing this tenure action under La.R.S. 17:443. Thus, the court reasoned, that the competence issue was not properly before the Board. Additionally, the court cited procedural error in the Board's failure to specifically vote on both charges (willful neglect of duty and incompetence) instead of generally voting to suspend Spurger. On January 13, 1993, the trial court signed the judgment reinstating Spurger and awarding him back pay.
From this judgment, the Board appeals and assigns 10 errors. We reverse on the procedural issue relied upon by the trial court and, further, hold that a rational basis existed for the Board's decision to suspend Spurger and place him on probation.

*1321 OPINION

The standard of judicial review of a teacher tenure hearing is whether it was conducted in accordance with the authority and formalities of the Louisiana Teachers' Tenure Act and whether it is supported by substantial evidence, or is conversely, an arbitrary decision and thus an abuse of discretion. The reviewing court must neither substitute its judgment for the judgment of the Board nor interfere with the Board's bona fide exercise of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La. 1976); Roberts v. Rapides Parish School Board, 617 So.2d 187 (La.App. 3rd Cir.1993), writ denied, 619 So.2d 1068 (La.1993).

Procedural Issues.
Spurger was charged with incompetency as well as willful neglect of duty. As correctly noted by the trial court, the procedure for sanctioning alleged incompetence differs from that for sanctioning alleged willful neglect of duty. When a tenured teacher's competence is called into question pursuant to an evaluation, he or she must be afforded supervised remediation pursuant to the Public School Accountability and Assessment Law, § 391.1 et seq. (specifically § 391.5). In Gaulden v. Lincoln Parish School Board, 554 So.2d 152, 156-157 (La. App.2d Cir.1989), writ. denied, 559 So.2d 126 (La.1990), our brethren of the Second Circuit concluded as follows:
... when the issue is incompetence, § 391.5 applies and should be complied with before dismissal proceedings are initiated under § 443. However, when the complaint is one of willful neglect of duty or dishonesty, there is no application of § 391.5. Instead, § 443 governs these proceedings. Reading these statutes together, we think the practical aspect of the distinction is clear. The board should attempt to work out problems, pursuant to § 391.5, with a teacher who is merely claimed to be incompetent. The board should not, however, have to comply with the remedial procedures authorized by § 391.5 when it seeks to dismiss a teacher who is alleged to be dishonest or willfully neglectful of his duty. (footnote omitted)
Clearly, the legislature considers incompetence a less egregious offense than willful neglect of duty because a charge of incompetence does not automatically result in a tenure hearing but instead is treated as a rehabilitative offense under § 391.5.
In the case sub judice, the issue was both incompetence and willful neglect of duty. Admittedly, the Board did not provide Spurger with § 391.5 incompetence remediation before initiating this tenure proceeding under § 443 on both charges. In this respect, the competency issue was, as the trial court concluded, not properly before the Board. The willful neglect of duty charge, however, was properly before the Board. In our opinion, the Board did not procedurally err in going forward with the hearing since one of the two charges was properly before the body for its determination. The record contains no indication that Spurger objected to the Board's failure to provide remediation prior to participating fully in the tenure hearing. The fact that one of the two separate offenses charged was procedurally defective does not nullify the result of the proceedings.
The trial court also concluded that the Board erred in failing to vote on and articulate the particular charge or charges upon which Spurger's suspension and probation were based. In so holding, the court relied on State ex rel. Franceski v. Plaquemines Parish School Board, 416 So.2d 150 (La.App. 4th Cir.1982), writ denied, 421 So.2d 907 (La.1982), wherein Franceski was charged with 16 alleged instances of willful neglect of duty and incompetence. After a hearing, the Plaquemines Parish School Board voted to dismiss her with only one member stating a ground therefor, willful neglect of duty. The other members simply voted to dismiss without specifying a reason. The Fourth Circuit held that the Board was obligated to vote on specific charges and its failure to do so constituted a deprivation of Franceski's rights under La.R.S. 17:443.
*1322 La.R.S. 17:443(B) provides, in pertinent part, as follows:
B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s) or instance(s) upon which the recommendation is based.
This statute does not specifically require that a school board vote separately on each particular offense charged or that each member, when voting to discipline an educator, specifically state the reason for or offense forming the basis of his or her vote. In Franceski, the school board charged the teacher with 16 separate and distinct instances of willful neglect of duty and incompetence and voted to dismiss her without stating which instances and offenses were proven. In the present case, Spurger was charged with one instance allegedly constituting incompetence and willful neglect of duty. The record indicates that, upon motion to suspend Spurger for one semester without pay and place him on probation for the following semester, the School Board voted six to two in favor of the motion.
Clearly, Spurger was aware that he was brought up on charges stemming from this singular instance of showing "Boss" to his Arts and Crafts special education class. After the taking of evidence and prior to the vote, the Board's attorney recited into the record the specific Board policy concerning teacher performance responsibilities as follows:
(a) To establish learning objectivesimmediate and long rangewith minimum daily, weekly or unit lesson plans which shall be available in the classroom;
(b) To teach effectively using class time for teaching designated subject matter as outlined by Board approved program, structured curriculum guides, and/or policy;

(c) To maintain an atmosphere within the class conducive to learning;
(d) To demonstrate an understanding of child growth ... showing respect for the individuality of each child; and
(e) To use language which is void of vulgarity, lewdness, coarseness, or profanity. (Emphasis ours)
Under the particular facts and circumstances of this case, we conclude that, unlike the situation in Franceski, supra, Spurger's rights under La.R.S. 17:443 were not violated by the Board's omission to vote on the particular charges. Clearly, the Board was convinced that, in this particular instance, Spurger had shirked his responsibility as a teacher, to use class time for teaching the designated subject matter, by showing "Boss". Procedurally it was not necessary for the Board to specifically label this sole offense as either willful neglect of duty or incompetence or both.

Sufficiency of the Evidence.
The judicial review standard of a tenure hearing determination is whether there is a rational basis for the school board's determination supported by substantial evidence insofar as factually required. The reviewing court is to grant great deference to the school board's conclusion and resulting sanction, if any. Howell, supra; Roberts, supra.
The record indicates that Spurger admittedly showed his class "Boss". He did so without any prior class discussion concerning the purpose of showing the movie. Additionally, no discussion was held afterwards. In this context, the Board's obvious rejection of his stated reason for showing this movie to a special education class was reasonable. We fail to understand how such an offensive movie could, without thorough discussion, effectively *1323 curtail the use of the word "nigger" amongst learning hampered black students. Even with an accompanying thorough discussion, Spurger's stated goal would have, at best, been difficult to obtain. Clearly, alternate methods of teaching exist to instruct the students that the word is offensive and that its use in society is undesireable. In any event, the record indicates that Spurger failed to use class time for teaching the designated subject matter, Arts and Crafts, and, by showing the movie, engaged in the use of coarse and offensive language. A rational basis supported by substantial evidence existed for the Board's determination and sanction.

DECREE
For the above and foregoing reasons, we hold that the trial court erred in reversing the Rapides Parish School Board's decision and reinstating Spurger with back pay. The trial court's judgment is hereby reversed and the Rapides Parish School Board's determination to suspend Spurger without pay for the first semester of the 1989-90 school year and place him on probation for the second semester thereof is hereby reinstated. All costs are to be paid by plaintiff-appellee, James C. Spurger.
REVERSED AND RENDERED.