640 So.2d 321 (1994)
Elton BERNARD, Plaintiff-Appellee,
v.
AVOYELLES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 93-534.
Court of Appeal of Louisiana, Third Circuit.
February 16, 1994.
*322 Louis Berry, Alexandria, for Elton Bernard.
David Edwin Lafargue, Marksville, for Avoyelles Parish School Bd.
Before COOKS, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
This is an appeal by defendant, Avoyelles Parish School Board (the Board), from the trial court's reversal of the Board's decision to terminate plaintiff, Elton Bernard, from *323 his position as a tenured school bus driver in Avoyelles Parish on May 29, 1985. Bernard was charged with two violations under the school bus operators' tenure law, LSA-R.S. 17:493. The first count was willful neglect of duty for failure to receive medical treatment during the period that he was on leave, failure to report to work following the end of his Board approved leave without pay of February 28, 1985, and also as a result of his incarceration for a felony which prevented him from performing the duties of a bus driver. Plaintiff's disability itself was cited as the second count for which a termination of employment can be based.
In reversing the Board's decision, the trial court held that the Board was arbitrary and capricious in dismissing plaintiff who was a tenured school bus driver.
For the following reasons, we reverse the judgment of the trial court and reinstate the decision of the Avoyelles Parish School Board.

FACTS
Plaintiff, Elton Bernard, a tenured school bus driver for the Mansura area, began his employment with the Avoyelles Parish School Board in 1968. Mr. Bernard apparently performed his duties well until the 1983-84 school year when he began being absent on a regular basis. After he had exhausted his ten (10) days of sick leave with pay allowed during a school year, several informal conferences were held concerning this absenteeism with Mr. Jerome St. Romain, Principal of the Mansura Elementary School. One such conference was held in January of 1984 wherein Mr. Bernard indicated that his attendance would improve. Despite this assurance, Mr. Bernard continued to miss an excessive number of days. On March 30, 1984, Mr. Bernard was notified by Mr. St. Romain that the absentee problem had continued and that Mr. Bernard had missed driving his bus 52 days for the 1983-84 school year which was not acceptable. This problem was also noted in the April 24, 1984, "Principal's Form for Evaluation of Bus Drivers" wherein Mr. Romain rated Bernard "unsatisfactory" as to dependability and punctuality and made the following notation, "Mr. Bernard is an excellent Bus driver. He must improve on his attendance during the school year."
Sometime in April of 1984, Mr. Bernard saw Dr. F.P. Bordelon for a physical examination which was required yearly by the Avoyelles Parish School Board. He told Dr. Bordelon that he was experiencing problems with his hands getting numb. In a note to the Board, Dr. Bordelon diagnosed this problem as Carpal Tunnel Syndrome and advised that "he may need surgery." He recommended that Mr. Bernard be excused from his school bus duties for the month of May, 1984, and evidently this leave was approved. Mr. Bernard testified that Dr. Bordelon further recommended that he see physicians in New Orleans for further testing and that he not drive his school bus until this problem was corrected.
On August 29, 1984, Mr. Bernard again saw Dr. Bordelon and Dr. Bordelon sent a letter to the Board requesting that the Board "grant a leave of absence for this semester to Elton Bernard in order that he may receive treatment for bilateral Carpal Tunnel Syndrome." Based upon this recommendation, the Board granted Mr. Bernard a leave without pay through September 30, 1984.
In either September or October of 1984, Mr. Bernard saw Dr. Naum Klainer, a New Orleans orthopedic surgeon, who confirmed Dr. Bordelon's diagnosis. Dr. Klainer indicated that Mr. Bernard was unable to work for an undetermined length of time and would probably need surgical intervention. Mr. Bernard continued to seek treatment from Dr. Klainer. On January 18, 1985, Dr. Klainer advised the Board that both hands needed surgery and two separate surgeries would be scheduled with a six (6) week recovery period for each. The first surgery was scheduled for February 21, 1985. Neither of these surgeries ever occurred.
As a result of his medical condition, Mr. Bernard requested and received three (3) leaves of absence, the last of which ended on February 28, 1985. Mr. Bernard failed to return to work following the end of his Board approved leave, nor did he request any additional leave.
*324 In addition to his medical condition, Mr. Bernard also experienced legal problems. In 1983, Mr. Bernard was charged in the U.S. District Court for flood insurance fraud. In November of 1983, Mr. Bernard was convicted of this felony offense and sentenced to three (3) years incarceration. Mr. Bernard appealed this conviction to the U.S. Fifth Circuit Court of Appeal sometime in late 1984 or early 1985, but subsequently abandoned this appeal at which time he was ordered to report to the federal correctional camp in Texarkana, Texas, on March 11, 1985, to commence serving this three (3) year sentence.

PROCEDURAL HISTORY
On May 3, 1985, because of Mr. Bernard's failure to return to work following the end of his February 28, 1985, approved leave, failure to request additional leave, failure to obtain the necessary medical treatment during these extended leaves which would allow him to return to work, and also his incarceration which began on March 11, 1985, Mr. Ronald Mayeux, Superintendent of Schools for Avoyelles Parish, recommended to the Board that Mr. Bernard be dismissed for willful neglect of duty and physical disability to perform his duties. On May 8, 1985, Mr. Bernard was notified of this recommendation and was advised that a hearing would be held on May 29, 1985.
Although incarcerated at that time, Mr. Bernard was allowed to attend this hearing and was represented by counsel. After hearing the testimony and viewing the evidence, the Board unanimously voted that Mr. Bernard was guilty on both counts and moved to uphold the Superintendent's recommendation that Mr. Bernard be dismissed from his position.
On May 29, 1986, Mr. Bernard filed a petition with the district court for a full hearing to review the action of the Board. Trial was held on January 4, 1993. The trial court reversed the decision of the Board dismissing Mr. Bernard finding that the Board was arbitrary and capricious in this dismissal. The trial court ordered that Mr. Bernard be reinstated in his position effective May 29, 1985, and that the Board reimburse him for all back salary, together with legal interest from May 29, 1985, on the sums due prior thereto and legal interest on each salary installment due thereafter until he was reinstated.
It is from this judgment that the Board appeals.

STANDARD OF REVIEW
Where an administrative agency or hearing body is the trier of fact, the reviewing court will not review the evidence before such a body except for the following purposes: (1) to determine if the hearing was conducted in accordance with the authority and formalities of the statute; (2) to determine whether or not the fact findings of the body were supported by substantial evidence; and, (3) to determine whether or not the hearing body's conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body's discretion. Roberts v. Rapides Parish School Board, 617 So.2d 187 (La.App. 3d Cir.), writ denied, 619 So.2d 1068 (La.1993); McLaughlin v. Jefferson Parish School Bd., 560 So.2d 585 (La. App. 5th Cir.1990); Allen v. LaSalle Parish Sch. Bd., 341 So.2d 73 (La.App. 3d Cir.1976), writ refused, 343 So.2d 203 (La.1977).
The criterion for judicial review of a school board's action is whether there is a rational basis for the board's determination which is supported by substantial evidence. The reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's good faith exercise of discretion. Thus, the court's inquiry must be limited to a determination of whether the action of the school board was in accordance with the authority and formalities of the tenure law, was supported by substantial evidence, or, conversely, was an arbitrary decision and therefore, an abuse of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976); Sampson v. Lincoln Parish School Bd., 439 So.2d 454 (La.App.2d Cir.1983); Allen, supra; McLaughlin, supra.

DISCUSSION
Under the school bus operator's tenure law, a school board has the discretionary *325 authority to dismiss a school bus operator for a number of infractions, among which are physical disability and willful neglect of duty. LSA-R.S. 17:493 provides the grounds for removal, the procedures and the right to appeal and states in pertinent part as follows:
A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance, or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish or city, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes.
B. All hearings hereunder shall be private or public, at the option of the operator affected thereby. At least twenty days in advance of the date of the hearing the superintendent, with approval of the school board, shall furnish the affected operator a copy of the written grounds on which said abolition, discontinuance, or consolidation of routes is sought. The operator affected shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the operator. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
C. If a permanent school bus operator is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the school bus operator a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason, offense, or instance upon which the recommendation is based. Such operator may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the operator is ordered reinstated and restored to duty, the operator shall be entitled to full pay for any loss of time or salary he may have sustained by reason of the action of the said school board.

WILLFUL NEGLECT OF DUTY
Bernard was charged with willful neglect of duty for not reporting to work subsequent to the conclusion of his board approved leave without pay which ended February 28, 1985, for failure to request additional leave, for failure to obtain the necessary medical treatment which would have allowed him to return to work and also because of his confinement at the federal correctional camp in Texarkana, Texas, on March 11, 1985, because of a federal felony conviction. We find that there is sufficient evidence in the record to uphold this charge.
Bernard began experiencing trouble with his disability in April of 1984 and sought medical treatment at that time. Dr. Bordelon recommended that Bernard refrain from work until he received treatment and possible *326 surgical intervention. This condition and treatment was confirmed by Dr. Klainer, the orthopedic surgeon from New Orleans. Bernard requested three leaves of absence to seek treatment for this condition which extended his leave without pay until February 28, 1985. Following this time, Mr. Bernard failed to request additional leave. Mr. Bernard was fully cognizant of the Board's procedure for requesting leave as he had requested and received three previous leaves of absence. He was also previously warned by the Board by correspondence dated October 8, 1984, and October 22, 1984, that failure to request additional leave and provide substantiating medical reports or to report to work fully certified to drive would result in termination. Therefore, Mr. Bernard was well aware of the Board's policy on this issue and should have followed the proper procedure in requesting additional leave at this time.
The record also supports the Board's finding that Mr. Bernard failed to exercise due diligence in obtaining the required medical treatment to correct his disability. As stated previously, his Carpal Tunnel Syndrome manifested itself in April of 1984 at which time Dr. Bordelon advised him that he "may need surgery," which was confirmed by Dr. Klainer. Surgery was eventually scheduled for February 21, 1985. However, by this time, Mr. Bernard had been sentenced to three (3) years incarceration and the federal judge, Judge Nauman Scott, refused to delay the execution of his sentence to allow him recuperation time and allegedly told Bernard that this corrective surgery could be done during his incarceration. Regardless of this, Mr. Bernard had approximately one (1) year prior to his dismissal to correct this problem so that he would be able to return to work, yet he failed to do so. Mr. Bernard's contention that he could not afford this surgery is without merit. Up until the time of the termination, Mr. Bernard was afforded medical insurance through the school board and this insurance would have assisted in the payment of this medically needed surgery. We cannot say that the Board abused its discretion in this finding.
With regard to his incarceration, in brief Mr. Bernard contends that since he was ordered by the federal court to commence serving his sentence on March 11, 1985, this did not constitute willful neglect of duty. However, LSA-R.S. 17:493(A) has never been interpreted to mean that an employee must intentionally neglect his duties before he can be terminated. McLaughlin, supra, 560 So.2d at 589-90. Although his incarceration may not have been willful, he should have realized that incarceration was a very real possible consequence of this conviction. Furthermore, Mr. Bernard had a duty to encourage respect for authority among the children under his supervision and being guilty of a felony exhibits a "willful neglect" of that duty. See Summers v. Vermilion Parish School Bd., 493 So.2d 1258, 1265 (La. App. 3d Cir.), writ denied, 497 So.2d 312 (La.1986).

DISABILITY
The second infraction Mr. Bernard was charged with was disability in that until corrective measures were taken, Mr. Bernard would be unable to resume his school bus operator's duties. Mr. Bernard had ample time to correct his condition and for various reasons, he did not do so. In fact, as of the date of trial, January 4, 1993, approximately eight (8) years after his dismissal, this condition had not been corrected and Mr. Bernard was still unable to drive his bus. Mr. Bernard had a duty to correct his disability in an expeditious manner in order to resume his bus driver's route. This he failed to do. A school board cannot be expected to hold a position open and continue payment of an employee's salary for an indeterminate amount of time. Therefore, we do not find that the Board abused its discretion in dismissing Mr. Bernard on the charge of disability.

SUFFICIENCY OF THE EVIDENCE
The judicial standard of review of a tenure hearing determination is whether there is a rational basis for the school board's determination which is supported by substantial evidence insofar as factually required. The reviewing court is to grant great deference *327 to the Board's conclusion and resulting sanction, if any. Howell, supra; Roberts, supra. In light of the above discussion, we find that there existed a rational basis supported by substantial evidence for the Board's determination and sanction.

DECREE
For the above and foregoing reasons, we find that the trial court erred in reversing the decision of the Avoyelles Parish School Board and reinstating Bernard with back pay.
The trial court's judgment is hereby reversed and the determination of the Avoyelles Parish School Board to dismiss plaintiff, Elton Bernard, is hereby reinstated.
All costs of these proceedings are to be paid by plaintiff-appellee, Elton Bernard.
REVERSED AND RENDERED.