452 So.2d 1275 (1984)
Prince LEWIS
v.
EAST FELICIANA PARISH SCHOOL BOARD.
No. 83 CA 0949.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Writ Denied October 12, 1984.
*1276 J. Arthur Smith, III, Baton Rouge, for plaintiff-appellant.
John F. Ward, Jr. and Robert L. Hammonds, Baton Rouge, for defendant-appellee.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
This matter comes before this Court on a second appeal from the judgment of the trial court in favor of the defendant, East Feliciana Parish School Board, upholding the decision, after hearing, of the School Board to dismiss plaintiff, Prince Lewis, from his position as a tenured teacher.
When this matter first came before this Court,[1] we upheld the trial court's refusal to give the plaintiff a trial de novo on his appeal to the district court from the adverse decision of the school board, but we found the trial court in error in its refusal to permit the plaintiff to present additional evidence. Accordingly, this Court set aside the judgment and remanded the case to the trial court so that the plaintiff might introduce such additional evidence as he wanted to introduce, with the school board being given an opportunity to negate or rebut the additional evidence presented by the plaintiff. We cautioned that the plaintiff's right to offer additional evidence was not unrestricted, and that the plaintiff was not permitted to duplicate the testimony which had already been heard by the school board. We instructed the trial judge that, after hearing the "additional evidence," he should then decide the case using the standard of review set forth in Howell v. Winn Parish School Board, 332 So.2d 822, 824 (La.1976), as follows:
Despite this provision for a full hearing before the district court, the standard of *1277 judicial review of a school board's action is still whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Lewing v. De Soto Parish School Board, supra [238 La. 43, 113 So.2d 462]; State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944); Simon v. Jefferson Davis Parish School Board, 289 So.2d 511 (La.App. 3d Cir.), writ denied 293 So.2d 178 (La.1974); Jennings v. Caddo Parish School Board, 276 So.2d 386 (La.App. 2d Cir.1973). Thus in the instant case, this Court will limit its inquiry to a determination of whether the action of the school board was (1) in accordance with the authority and formalities of the Louisiana Teachers Tenure Act, and (2) supported by substantial evidence, or conversely, an arbitrary decision and thus an abuse of discretion. Lewing v. De Soto Parish School Board, supra; Celestine v. Lafayette Parish School Board, 284 So.2d 650 (La.App. 3d Cir.1973); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3d Cir.1965).
After the matter was remanded to the trial court, the plaintiff moved to remand the case to the school board for it to hear additional evidence on his behalf. This motion was properly denied. The matter was then taken up by the trial court. The additional evidence presented by the plaintiff consisted of the testimony and evidence of a polygraph examination and two psychologists. The former attorney for the plaintiff testified in proffer, and the defendant presented a polygraph expert.
The trial court, after considering the totality of the evidence, concluded that the decision of the school board to dismiss this tenured teacher was supported by substantial evidence. The court found that the board's decision was neither capricious or arbitrary nor an abuse of discretion. Mr. Lewis was given a "full hearing" to review the action of the school board.
In our previous decision, we ruled that the action of the school board was in accordance with the authority and formalities of the Louisiana Teachers Tenure Act, LSA-R.S. 17:443; that Mr. Lewis was accorded the procedural safeguards contained in the statute and that he was not denied due process of law in his hearing before the school board. 372 So.2d at 652. We will not reconsider that ruling.
We now address the basic issue presented in this appeal, whether the trial court erred in its conclusion that the decision of the school board was supported by substantial evidence, and the decision was not arbitrary, capricious or abuse of discretion.
The record of the hearing before the school board, and the transcript of the testimony and evidence presented to the trial court, including the "additional evidence," reveal the following:
Prince Lewis, the appellant herein, was a fifth grade teacher at Clinton Lower Elementary School. On February 20, 1976, one of his students, who is named in the proceedings but will not be named in this opinion, needed to take a make-up test. Mr. Lewis had her sit in the hall outside the presence of the other students to take the test. While taking the test, the student (who was 11 years old) was approached by her teacher. It was later revealed that Mr. Lewis placed his hand extremely high up on the inner part of her upper thigh and made a rubbing movement. The child, very upset, ran to the school office and reported the incident. Her condition was described as tearful, almost hysterical.
An investigation into the matter was promptly made. During the course of the investigation, James Soileau, the school superintendent, received complaints from the parents of other young female students, in the 10 and 11 year age group, who were in the fifth grade class taught by Mr. Lewis. In each complaint, Mr. Lewis was accused of having placed his hands on or very near the private parts of the body of the particular child.
*1278 The investigation led to a tenure hearing to determine the truth or falsity of the charges made against the teacher. At the hearing, each of the young female students testified specifically as to exactly where and when the plaintiff committed the particular act of misconduct with which he was charged. Counsel for the plaintiff cross examined the children about the incidents. In addition, the mother of each child testified that her daughter had related the misconduct of Mr. Lewis, either on the day of the occurrence of the incident or shortly thereafter. The testimony indicated that the little girls were ashamed, embarrassed or scared, at first, to tell their mothers of the acts of the plaintiff.
Superintendent Soileau also testified at the tenure hearing, to the charges having been made against the teacher, Prince Lewis, and of having made an investigation into the matter. Wendell H. Hall, Superintendent of Schools for West Feliciana for many years, qualified as an expert in the field of education and school system administration, and testified that the misconduct of a male teacher toward young female students, such as that alleged to have been committed by Mr. Lewis, would, if true and established, constitute wilful neglect of duty as a teacher and adversely affect the teacher's competency in the classroom.
At the tenure hearing, Mr. Lewis denied the charges made. He also offered several character witnesses in his behalf. Plaintiff's offer to present the testimony by deposition of a child psychologist (which had not then been taken) was not allowed. The record shows that near the end of the lengthy hearing, counsel for plaintiff requested a continuance for the stated purpose of allowing him to retain and depose a child psychologist. The continuance was refused. At the conclusion of the evidence, the school board found Mr. Lewis guilty of the charges made, and ordered his dismissal from his position as a tenured teacher.
The case then began its course for judicial review, which we have mentioned above. The additional evidence presented by the plaintiff at the review hearing in the trial court on remand was, as follows:
1. A proffer by Mr. Lewis' former attorney regarding due process.
2. Testimony of a psychologist, Fred Tuton, who examined Mr. Lewis on November 23, 1982, about six years after the incidents in question.
3. Testimony of Dr. Tom Stigall, Ph.D., psychologist, whose report was made in 1980, some four years after the incidents.
4. Testimony of Max Glasgow, a polygraph examiner who conducted a polygraph examination of Mr. Lewis on May 21, 1980, about four years after the incidents.
As stated above, the issue of due process has been previously decided by this Court, so the testimony of former counsel on this point is not properly before the Court. There is, moreover, nothing to suggest that the attorney's testimony is "additional evidence" which the plaintiff was not allowed to present to the school board or the trial court at the first review hearing.
Mr. Tuton, who examined Mr. Lewis some six years after the incidents, conducted a clinical interview of Mr. Lewis, and administered a number of psychological tests: WAIS, basically an intelligence test and which indicated that Mr. Lewis was of "Average Intelligence (Full Scale 99);" Bender Motor Gestalt and Draw-a-Person tests, basically tests to rule out brain damage or lag in motor development and which were essentially normal; Rorschach and MMPI tests, basically tests dealing with personality and a determination of sexual deviation and which revealed no evidence of sexual deviation; and certain other psychological tests.
Mr. Tuton was of the opinion that Mr. Lewis displayed no signs of mental disorder at the time of his evaluation. This opinion was based only "in the context of the personality profile," no social history or social investigation of past problems having been performed on Mr. Lewis. Mr. Tuton further testified that an incident occurring in 1976 might not be reflected in a psychological examination conducted in *1279 1982, and that it was possible for Mr. Lewis to have committed the acts with which he was charged.
The trial court summarized Mr. Tuton's testimony as:
"... [I]t must be said that Mr. Tuton's expert testimony was favorable to Mr. Lewis. His conclusions were based on professionally accepted tests and methods of evaluation. His subjective interpretation, however, must be weighed in consideration of the fact that he was not afforded the perspective of a social history from independent sources, nor the benefit of reading and studying the transcript, nor his presence at the initial hearing. It cannot be said, however, that his findings, conclusions, and opinion exclude the possibility of the proscribed conduct of which Mr. Lewis was accused, and for which the initial fact finding body found he had so performed."
Dr. Stigall, an expert psychologist, rendered his report about four years after the incidents. He reviewed the transcript of the tenure hearing, the polygraph examination made by plaintiff's polygraphist, and made a survey which revealed certain generalities as to influence by reference groups, peers, church groups, family, neighbors, factors affecting conformity, peer pressure in age groups 9-15, suggestibility and degree of influence between parent and child.
Dr. Stigall, from his study, reached three possibilities or alternative conclusions:
1. No touching had occurred and there was a conspiracy to harm Mr. Lewis.
2. Mr. Lewis innocently touched the female students but such physical contact was misinterpreted and exaggerated by the students or they began to attach undue significance to the contacts because of parental and peer pressure.
3. Mr. Lewis had indeed committed the acts as charged.
Dr. Stigall was of the opinion, based on his assumption that the polygraph results were accurate, that the "realistically plausible explanation" was that innocent contact with the students had been made which had become exaggerated or blown out of proportion, or misinterpreted.
He testified that his opinion would be affected if the polygraph results were inaccurate, and that it was possible that the young girls were telling the truth. He did not examine the girls or Mr. Lewis, but merely read the record, considered the polygraph results and ran a literature survey. In summation, Dr. Stigall offered the benefit of his expert knowledge based on the record, considering the phenomena that might have affected the complaining witnesses. The trial court did not accept Dr. Stigall's opinion as conclusive in arriving at its decision. We agree with the trial court. The school board directly observed the tenure hearing confrontation between the students and the teacher, heard the testimony of the witnesses and observed their demeanors. From its vantage point, the school board was in a better position than the courts to judge the nature and location of the physical contacts between teacher and students, to ascertain the general credibility of the witnesses and to determine the effect of their susceptibility to social influence, peer pressure, parental pressure and other related susceptibilities. Neither the psychologists nor the trial judge had an opportunity to observe the complaining witnesses or the plaintiff as they testified at the tenure hearing, or on any other occasion.
The third witness called by the plaintiff was Max Glasgow, a polygraphist. Although the defendant objected to the introduction of polygraph evidence, this objection was effectively waived at the trial. Writs were not applied for and defendant has neither appealed nor answered the plaintiff's appeal, so the issue of the admissibility of polygraph evidence is not before this Court. In the case at bar, the plaintiff presented the testimony of the polygraphist who gave the polygraph test to Mr. Lewis about four years after the incidents in question, on May 21, 1980. The defendant countered with its own polygraph expert, *1280 who, while not conducting an actual polygraph examination, gave his interpretation and critique of the one conducted by Mr. Glasgow. Considering both experts' opinions, the trial judge found that the results of the polygraph examination were "inconclusive." Our review of the record and the evidence of the polygraph and polygraphists leads us to the same conclusion.
After reviewing all of the evidence in the record and the applicable law, we affirm the judgment of the trial court.
We agree with the finding of the trial court that:
"... [T]he totality of evidence in this cause does not merit that the decision of the School Board be reversed. That decision does not cease to be based on substantial evidence. It has not been found to be arbitrary or capricious and is affirmed."
There is in the record a rational basis for the school board's determination supported by substantial evidence insofar as factually required. As a reviewing court of a reviewing court, we are neither permitted to substitute our judgment for the judgment of the school board nor to interfere with the board's good faith exercise of discretion. See Sampson v. Lincoln Park School Board, 439 So.2d 454 (La.App. 2nd Cir.1983).
For the reasons assigned, we affirm the judgment of the trial court affirming the action of the school board in dismissing plaintiff from his position as a tenured teacher, at appellant's costs.
AFFIRMED.
NOTES
[1] Lewis v. East Feliciana Parish School Board, 372 So.2d 649 (La.App. 1st Cir.1979), writ denied 375 So.2d 959 (La.1979).