688 So.2d 1312 (1997)
Reed COLEMAN
v.
ORLEANS PARISH SCHOOL BOARD.
Nos. 93-CA-0916, 94-CA-0737.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1997.
Writ Denied April 25, 1997.
*1313 Larry Samuel, Jay Alan Ginsberg, Rittenberg and Samuel, New Orleans, for Plaintiff/Appellee.
Franklin V. Endom, Jr., Polack, Rosenberg & Endom, New Orleans, for Defendant/Appellant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
The Orleans Parish School Board (OPSB) appeals the trial court's reversal of its decision *1314 to demote plaintiff Reed Coleman from his position as a tenured special education teacher to a paraprofessional position. The OPSB also contests the trial court's judgment restoring Coleman to his former position as a tenured teacher and restoring all of his salary, compensation, and emoluments, including payment of insurance premiums, retirement contributions, union dues, and hospitalization premiums, as well as payment of attorney fees and court costs. We amend to delete the attorney fee award, and affirm as amended.

Facts
Coleman had been employed by the OPSB since 1973. At the end of the 1987-88 school year, the principal of the school where Coleman worked as a special education instructor teaching a class of three students classified as Behavior Disordered and Emotionally Disturbed (BD/ED) gave him an unsatisfactory evaluation rating. Additionally, the administration recommended that the OPSB dismiss Coleman from employment, charging him with both incompetence and willful neglect of duty. The OPSB considered the administration's recommendation during a lengthy "tenure hearing" pursuant to the requirements of LSA-R.S. 17:462, held on seven evenings beginning on April 26, 1989 and ending on April 27, 1990.
Prior to the hearing, the administration enumerated some 39 specific instances in support of its charges against Coleman. During the hearing, the administration presented the testimony of a number of witnesses, mostly supervisory personnel charged with the duty of evaluating Coleman's performance as a teacher. The witnesses described a number of specific situations which they had witnessed during their observation of Coleman's classes. Based on the testimony of the administration's witnesses, the OPSB sustained 20 of the charges and found Coleman guilty of willful neglect of his duty to manage his class. The incompetence charge was dismissed by the administration prior to the OPSB's decision in the case.
Pursuant to his rights under the provisions of LSA-R.S. 17:462(B), Coleman filed a Petition for Judicial Review of the OPSB decision in Civil District Court. The trial court originally entered judgment on April 6, 1993, ordering the OPSB to reinstate Coleman to his position as a tenured teacher, together with restoration of all salary, compensation and emoluments, plus attorney fees and costs. On suspensive appeal by the OPSB, this court remanded to the trial court to receive the transcripts and exhibits introduced at the tenure hearing. On remand, the trial court reinstated its April 6th judgment.
In its reasons for entering the original judgment, the trial court found that the OPSB has abused its discretion when it demoted Coleman for three reasons, which may be summarized as follows: (1) Despite the fact that the evidence presented by the administration was evidence of the behavior of Coleman's students, Coleman was prevented from introducing evidence of the disruptive behavior of the students in other years; (2) The OPSB admitted "expert testimony" from persons not certified to teach students classified as BD/ED who had only limited experience teaching such students, while refusing to admit testimony from Coleman's witnesses who were so certified and who had a lot of experience teaching such students; and (3) the administration failed to meet its burden of proving that Coleman had wilfully neglected his duty because it failed to present evidence that Coleman willfully or deliberately planned to neglect any duties.
The OPSB has again appealed the trial court decision.

Standard of review
Generally, the standard for reviewing a school board's decision after a tenure hearing has two parts: (1) determination of whether the hearing was conducted in accordance with the formalities of the tenure law, and (2) determination of whether the decision is based on substantial evidence. Gaulden v. Lincoln Parish School Board, 554 So.2d 152, 157 (La.App. 2d Cir.1989), writ denied, 559 *1315 So.2d 126 (La.1990).[1] The appellate court thus must determine whether the record contains "a rational basis for the school board's determination supported by substantial evidence insofar as factually required." Meyers v. Sabine Parish School Board, 499 So.2d 690, 696 (La.App. 3d Cir.1986), writ denied, 501 So.2d 236 (La.1987); Lewis v. East Feliciana Parish School Board, 452 So. 2d 1275, 1280 (La.App. 1st Cir.), writ denied, 458 So.2d 123 (La.1984). "Substantial evidence" has been defined as "evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions." Wiley v. Richland Parish School Board, 476 So.2d 439, 443 (La.App. 2d Cir.1985).
Great deference should be given to a board's factual findings and credibility determinations. Gaulden, 554 So.2d at 157. Reasons for dismissal are largely in the sound discretion of the school board. Gaulden, 554 So.2d at 157. The school board's judgment thus should not be reversed in the absence of a clear showing of abuse of discretion. Gaulden, 554 So.2d at 157.
In the instant case, Coleman makes no claim that the hearing was not conducted in accordance with the formalities of the tenure law. Moreover, Coleman does not challenge the board's factual findings or credibility determinations. Thus, we must determine only whether the school board's decision to demote Coleman is grounded in a rational basis supported by substantial evidence.

"Willful neglect of duty"
"Willful neglect of duty" is listed by LSA-R.S. 17:462, along with immorality and incompetence, as one of three grounds for removing a tenured teacher employed by the Orleans Parish School Board. Only one reported case, Granderson v. Orleans Parish School Board, 216 So.2d 643 (La.App. 4th Cir.1968), writ ref'd, 253 La. 629, 218 So.2d 903 (La.), cert. denied, 396 U.S. 822, 90 S.Ct. 64, 24 L.Ed.2d 73 (1969) has interpreted the provisions of that statute, and it is not especially helpful to our decision in the instant case because it does not define "willful neglect of duty." In Granderson, the court affirmed the dismissal of a tenured teacher for willful neglect of duty because of excessive absenteeism and tardiness.
Removal of tenured teachers in Louisiana parishes other than Orleans is governed by LSA-R.S. 17:443, which also lists "willful neglect of duty" as one of the grounds for removing a teacher. Because the same words are found in that statute, the cases interpreting the willful neglect of duty ground under LSA-R.S. 17:443 may be considered in determining whether an Orleans Parish teacher was properly dismissed for willful neglect of duty.
Most recently, LSA-R.S. 17:443 has been interpreted in Gaulden, 554 So.2d 152, in which the court found that a school board could properly dismiss a teacher on substantial evidence that the teacher refused or failed to comply after repeated instructions both to update cumulative files and to keep her students inside her own classroom. In affirming the school board's dismissal of the tenured teacher, the court found that "general warnings are adequate against conduct that the teacher should know is unacceptable" for dismissal based on willful neglect of duty. Id. at 157.
In Wiley, 476 So.2d 439, the same court that decided Gaulden affirmed a dismissal of a tenured teacher who failed to comply with specific directives given by her supervisor for willful neglect of duty, without any discussion concerning the meaning of that phrase. In a third decision by the Louisiana Second Circuit Court of Appeals, Cunningham v. Franklin Parish School Board, 457 So.2d *1316 184 (La.App. 2d Cir.), writ denied, 461 So.2d 319 (La.1984), the court reversed a trial court judgment ordering a teacher reinstated, finding that evidence that the teacher had left three handicapped students locked unattended in a classroom and that she had missed classes without permission and without a substitute was sufficient to prove that the teacher was guilty of willful neglect of duty. The Wiley court found that the teacher had either been warned or she otherwise knew that her conduct was contrary to school policy. Id. at 189.
Likewise, in Meyers, 499 So.2d 690, the Louisiana Third Circuit Court of Appeal affirmed a trial court's dismissal of a tenured teacher on substantial evidence of one incident of willful neglect of duty when the teacher had left her students unattended in direct contravention of the principal's orders.
From the above decisions, only one conclusion may be drawn concerning the proper dismissal of tenured teachers for willful neglect of duty. Based on the express language of the decisions, the teacher must have some knowledge that his actions were contrary to school policy gained either through warnings from his supervisors or from general knowledge concerning the responsibilities and conduct of teachers. In fact, in all but one of the above cases, the teacher failed to comply with a specific order given by a supervisor or principal. Thus, under the caselaw, teachers may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy.
The OPSB claims that the trial court in the instant case improperly imposed a requirement that the administration prove the Coleman willfully or deliberately planned to neglect his duties, asserting that the two decisions cited by the trial court improperly imposed that requirement. See Cunningham, 457 So.2d 184; Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959). Instead, the OPSB cites two decisions dealing with charges of willful neglect of duty leveled against tenured school bus drivers, in which the courts held that the statute governing removal of tenured bus drivers "has never been interpreted to mean that an employee must intentionally neglect his duties before he can be terminated." Bernard v. Avoyelles Parish School Board, 640 So.2d 321, 324 (La.App. 3d Cir.1994) (bus driver was prevented from performing his duties because he was incarcerated); McLaughlin v. Jefferson Parish School Board, 560 So.2d 585, 590 (La.App. 5th Cir. 1990) (five-year-old student remained on bus after completion of rounds). We find, however, that, even assuming (without deciding) that the bus driver statute and cases apply to tenured teachers, the two cases cited by the OPSB actually support the rule enunciated above requiring a showing that the tenured party committed a specific action or failed to act in contravention of a direct order or identifiable school policy in order to support dismissal for willful neglect of duty. In both of the bus driver cases, the tenured driver committed an act which was obviously against identifiable school policy.

Sufficiency of the evidence
Accordingly, we will review the record in the instant case to determine whether it reveals a rational basis supported by substantial evidence that Coleman either acted or failed to act in contravention of a direct order from a supervisor or against an identifiable school policy.
Coleman claims that, although the OPSB did prove that his students behaved inappropriately during the 1987-88 school year, the OPSB did not prove that the students' acts of misconduct were caused by his willful neglect of duty. All of the testimony concerning the problems in Coleman's classroom focused on the behavior of his students, Coleman notes, not on his efforts or lack of efforts to correct that behavior. Moreover, some of the criticisms leveled by the witnesses who had observed Coleman's classroom were based on the witness's failure to understand the situation, Coleman said. Coleman claims that the administration's evidence was all directed toward the incompetency charge, not the willful *1317 neglect of duty charge, despite the fact the administration dropped the incompetency charge prior to the time the OPSB ruled in the case. The administration simply failed to present any direct evidence of willful neglect of duty, Coleman claims.
Our review of the record supports Coleman's arguments. The evidence presented by the administration all focused on the inappropriate behaviors exhibited by Coleman's students during the 1987-88 school year. The administration presented the testimony of four witnesses in support of the charges against Coleman: Sue Meyer, area special education coordinator for Orleans Parish preschool through secondary school; Sylvia Julian, special education coordinator for Orleans Parish; Dr. Gail S. Armant, assessment consultant for the OPSB; and Gwendolyn Jones, coordinator of special education discipline.[2] Not one of the witnesses testified concerning any direct orders or identifiable school policy violated by Coleman in his management of his class. Most of the testimony dealing with the supervisors' contact with Coleman was related to what he had done wrong in a given situation, not his failure to follow orders or identifiable school policy.
Moreover, even the testimony of the administration's witnesses indicates that Coleman took many positive steps to attempt to improve the situation in his classroom during the 1987-88 school year. Ms. Meyer testified that she saw lesson plans Coleman had prepared as well as "some attempts at things," like copying from the board and group discussion, which "just fell apart." Record, May 2, 1989, at 73. Ms. Julian testified that Coleman used "time out" as a management behavior, but it was "not very successful." Id. at 153. Moreover, Ms. Julian said that Coleman rewarded the students with stars. Id. at 160.
Dr. Armant testified that she had actually been contacted by Coleman "because he wanted information about behavior contracting and some specific information about student in his class and how he could address some problems he was having." Record, May 15, 1989, at 11. Dr. Armant observed Coleman's class and made "specific indications as to what could be done." Id. at 16. See also Id. at 22. However, she did not testify that Coleman failed to follow those "indications." At least one of her suggestions was made "because Mr. Coleman was looking for some additional resources" and "[h]e had asked for some help." Id. at 25. Coleman was very receptive to the suggestions, Dr. Armant said, and indicated that he understood them. Id. at 27. Coleman told Dr. Armant that he had tried to contact one of the students' parents on many occasions. Id. at 40. She knew Coleman had tried to get parental conferences. Id. at 42. She knew he had asked for suspension or expulsion of some or all of his students. Id. at 43. Coleman had also recommended the reconvening of the IEP committee for one of his students, according to Dr. Amant's testimony. Id. at 46.
Ms. Jones testified that Coleman contacted her looking for assistance because he was having "difficulty containing the students." Id. at 77. She discussed some of the students' behaviors with Coleman and concluded that they were related to the students' exceptionalities. Id. at 78. She recommended reconvening the IEP committee "to consider some other alternative that could be added to the IEP's to address his concern about their behavior." Id. at 79. While she was talking to Coleman in his classroom he did get up to attend to a problem between two of the students. Id. at 82. She received a number of referrals on Coleman's students during the 1987-88 year. Id. at 91.
Moreover, Coleman's testimony is replete with discussion of actions he took to solve the discipline problems with the students. During the October 10, 1989 hearing, Coleman said he did the following things: implemented a daily schedule for each child to *1318 address each child's IEP goals, Id. at 65; sent notes to the principal, Id. at 87; sought the principal's assistance in returning his students to class, Id. at 82; sought to institute a reward/sanction type of program for the students, Id. at 86, 125; discussed solutions to the problems with the principal, Id. at 99, 107; sought "supportive services," Id. at 100; constantly tried to work with the principal and other members of the "team" to "service" youngsters, Id. at 107; submitted behavior referral forms, Id. at 117; and requested that a particular student with a particularly profound effect on the others be placed in another environment at least temporarily, Id. at 118. Coleman also testified on that day that he visited with parents in homes, telephoned parents, counselled students, requested suspensions from class, and requested modified plans, all to no avail.
On March 6, 1990, Coleman testified to doing the following things: requesting supporting and appraising of services, Id. at 20; filling out a disciplinary action form, Id. at 23; having a personal discussion with a student concerning his behavior, Id. at 24, 74; requesting a modified plan, Id. at 27; completing a discipline referral form, Id. at 28; seeking reevaluation and an official parental conference, Id. at 31, See also Id. at 75, 77; employing two specific management techniques, "cooling down" and going for a walk; Id. at 43-44, See also Id. at 106; contacting parents to come get a student, Id. at 45-46; talking to parents about situations at home that caused problems for the students, Id. at 53; visiting in the students' homes, Id. at 54; entering informal "behavior" contracts with the students, Id. at 54-55; employing a combination of rewards and sanctions to make a student fully responsible for his behavior, Id. at 55; and recommending that a student be allowed to return to school only after an official parent conference, Id. at 67. All told, Coleman prepared 35 disciplinary referral forms during 1987-88.
A review of the record as a whole reveals that the OPSB did not have a rational basis supported by substantial evidence for its demotion of Coleman for willful neglect of duty. We note that most of the evidence presented by the administration seems directed more to Coleman's lack of competence than to any willful neglect of duty. However, the administration withdrew its competency charge against Coleman at the end of the hearing. The term "willful" requires some deliberate action on the part of the teacher to avoid or fail to perform a clear duty of his employment. "Willful" is defined by Black's Law Dictionary, in pertinent part, as follows:
Proceeding from a conscious motion of the will; voluntary. Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.
Coleman clearly had a duty to manage his classroom; Coleman clearly had difficulty fulfilling that duty; however, the record does not support a finding that Coleman's failure to fulfill that duty "proceed[ed] from a conscious motion of [his] will" or was voluntary. In fact, the record indicates that Coleman took every action he could conceive in his efforts to fulfill the duty to the best of his ability. Certainly the record does not support a finding that Coleman "intend[ed] the result which actually [came] to pass," designed or intended for the class to be out of control. The behavior of Coleman's students certainly was "accidental and involuntary" on Coleman's part. Proof that Coleman was not able to fulfill the duty is insufficient to support Coleman's demotion for willful neglect of duty. Thus, we affirm the trial court judgment reversing the decision of the OPSB and reinstating Coleman to his former position with restoration of all salary, compensation, and emoluments, as amended below.

Exclusion of evidence of students' behavior in other years
The trial court's decision reversing the decision of the OPSB is also based on its finding that the OPSB improperly excluded evidence of the behavioral problems caused by Coleman's student in years other than 1987-88, when the students were taught by teachers other than Coleman. The OPSB defends its decision on this issue by claiming *1319 that the evidence was irrelevant in determining whether Coleman managed his class appropriately during 1987-88. Admitting such evidence would, the OPSB claims, "effectively... put the students on trial ... with a view of avoiding teacher responsibility." At best, the OPSB claims, such evidence would only lessen Coleman's guilt of willful neglect of duty.
Coleman points out that the administration's proof of his alleged willful neglect of duty consisted entirely of evidence concerning the misbehavior of his students. Thus, Coleman claims, evidence of the students' behavior in other years was necessary to demonstrate that the students' conduct was caused by Coleman's willful neglect of duty. The OPSB arbitrarily excluded competent and relevant evidence, Coleman says.
We agree with the trial court's ruling on this issue. Obviously, Coleman's students could not be expected to behave like "normal" students. Thus, evidence of their behavior while being taught by other teachers is relevant to determining whether Coleman willfully neglected his duty.

Admission of expert testimony
The trial court also found that the OPSB improperly admitted expert testimony from persons not certified to teach BD/ED students, while excluding testimony from persons certified to teach such students. The Louisiana Code of Evidence does not apply to school board proceedings under the Tenure Act. Roberts v. Rapides Parish School Board, 617 So.2d 187, 191 (La.App. 3d Cir.), writ denied, 619 So.2d 1068 (La.1993). Additionally, under La. C.E. art. 702, the trier of fact is given great discretion in the admission of expert testimony. Armstrong v. Lorino, 580 So.2d 528 (La.App. 4th Cir.), writ denied, 584 So.2d 1166 (La.1991).
The testimony of Coleman's witnesses was excluded, the OPSB claims, because none of those witnesses had observed Coleman's management of his class during the time period in question, while the administration's witnesses had all observed Coleman during 1987-88. Coleman claims, on the other hand, that the OPSB arbitrarily allowed the administration to introduce testimony from witnesses that were not qualified to render expert opinions regarding the performance of a teacher working with BD/ED students. At the same time, Coleman says, the OPSB prevented him from presenting the testimony of certified teachers who would have shown that he did not willfully neglect his duties, but that he took the appropriate steps to control his students' inappropriate behavior. The witnesses were not being called to evaluate Coleman's teaching performance, Coleman asserts, but to show that the behavior of his students was to be expected given their special educational challenges, which testimony could have been linked with Coleman's testimony concerning the particular classroom management techniques he used.
Again, we agree with the trial court's findings on this issue. Coleman's students fell within a special classification, entitled to special treatment. Certainly expert testimony from other teachers with certification and experience with the type of students with whom Coleman was dealing is relevant to his case. Although the testimony of the administration's witnesses was properly admitted, the testimony of Coleman's witnesses was improperly excluded.

Remand for taking of further evidence
The OPSB claims that the trial court should not have reversed its decision demoting Coleman because of its improper evidentiary rulings, but should merely have remanded to the OPSB for the taking of further evidence. However, the Louisiana Supreme Court held in Lewing, 238 La. 43, 113 So.2d 462, that a teacher should not be required to present additional evidence when the administration fails to present sufficient evidence to sustain his dismissal. Under the circumstances, a remand is not necessary. The OPSB failed to present sufficient evidence to support its charges against Coleman; thus, the OPSB's decision must be reversed. Coleman's rebuttal evidence is not needed to support a reversal of the OPSB's decision. Thus, we decline the OPSB's suggestion *1320 that we remand the case for further evidence.

Award of attorney fees
Alternatively, the OPSB contests the trial court decision awarding attorney fees to Coleman, noting that attorney fees may not be awarded in the absence of statute or contract. Attorney fees are not provided in the instant case by statute or contract; thus, the trial court improperly awarded attorney fees. The judgment is amended to delete the award of attorney fees.

Conclusion
Accordingly, the trial court judgment is amended to delete the attorney fee award. In all other respects, the trial court judgment is affirmed.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] Orleans Parish tenured teachers are governed by a separate set of provisions, LSA-R.S. 17:461-17:464, than those governing tenured teachers in other Louisiana parishes, LSAR.S. 17:441-17:445. However, many of the requirements in the two sets of provisions are very similar. None of the cases interpreting the Orleans Parish provisions specify the standard of review. Thus, we look to the cases interpreting the provisions governing tenured teachers in other Louisiana parishes, which apply in pari materia.
[2] The titles given reflect the positions held by the witnesses during the 1987-88 school year when they observed Coleman, not necessarily the positions held by the witnesses at the time of the hearing or presently.