780 So.2d 1110 (2001)
Whickleff J. CHAPITAL
v.
ORLEANS PARISH SCHOOL BOARD.
No. 2000-CA-0646.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2001.
Writ Denied April 27, 2001.
*1112 William F. Wessel, Wessel & Associates, New Orleans, LA, Counsel for Plaintiff/Appellant.
Joseph T. Puhekker, Franklin V. Endom, Jr., Polack, Rosenberg, Endom & Riess, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Judge PLOTKIN, Judge WALTZER and Judge TOBIAS.
WALTZER, Judge.

STATEMENT OF THE CASE
On 29 April 1997, acting pursuant to LSA-R.S. 17:462-463, Morris L. Holmes, Jr. (Holmes), the Orleans Parish School Board's Superintendent of Schools, charged Whickleff J. Chapital, Sr. (Appellant), with willful neglect of duty based upon the following:
Associate Superintendents John L. Smith and Dr. Linda T. Fortenberry, Appellant's superiors at the time, issued letters to him on 28 June 1989 and on 26 *1113 May 1994, reprimanding him for his involvement in separate incidents of physical confrontation with students.
Prior to his assignment as an Assistant Principal at the Live Oak Middle School, in the summer of 1994, Appellant was given specific oral instructions by his present superior, Associate Superintendent for Area I Schools, Dr. J. Rene Coman (Coman), for Appellant not to place or use his hands on students. Appellant was similarly instructed on several occasions by his Principal, Martin B. Marino (Marino).
Despite these warnings, on 16 May 1997, in the rear yard of Live Oak Middle School, Appellant either intentionally slapped or intended to make forcible physical contact with student, N.F.[1], striking her in the face.
Holmes recommended that the Board accept the charges, hold a hearing as required by law, and take such action as it deemed appropriate. Holmes also recommended that Appellant be suspended without pay effective 30 April 1997.
Following the hearing, held in public on 16 October 1997, at Appellant's request, the four Board members present, Mrs. Cade, Mr. Shea, Mrs. Ford and Dr. Brechtel, resolved that the evidence sustained the allegations contained in the Holmes letter, found Appellant guilty of willful neglect of duty and terminated Appellant's employment.
Appellant sued the Board, a political subdivision of the State of Louisiana, for damages arising out of his allegedly wrongful termination.
Following a status conference held on 22 June 1999, the trial court set the case for hearing and ordered briefing by the parties. The trial court, with the consent of the parties, ordered that the case be submitted on the evidence of the transcript of the tenure hearings and exhibits used therein. In connection with implementation of that order, the trial court granted the Board's motion to strike three exhibits submitted by Appellant but not introduced at the tenure hearing: Board Policy No. 4142 on Staff Protection, Appellant's personnel record, and Appellant's affidavit. There is no evidence in the record that Appellant sought supervisory review of that judgment of 4 September 1999.
On 28 September 1999, the trial court entered judgment in favor of the board, dismissing Appellant's claim with prejudice. From that judgment, Appellant appeals. We affirm.

STATEMENT OF FACTS
The relevant facts were adduced at the tenure hearing held on 16 October 1997. At that hearing, the parties submitted the following stipulated documents:
The Board Policy dated 14 August 1989 outlining procedure for investigation of employees accused of, inter alia, "Impermissable (sic) Corporal Punishment ... Involving Students." According to this policy, impermissible corporal punishment is defined as any corporal forms of discipline which are prohibited by the Board and for which the Board may or will retain information in its files. The policy prohibits corporal punishment in Orleans Parish schools and provides that all complaints of unreasonable force involving a Board employee and a student are to be investigated immediately by the administrator in charge at the time the report is made.
If probable cause exists to believe that an employee used unreasonable force against a student, but did not cause the student physical injury, the accused shall be issued a verbal reprimand, instructed to cease and desist, and to return to his or her assignment pending a formal hearing of the charges at the next level of authority. If the student is bodily injured, the employee shall be relieved of his or her duties and the Child Abuse Section of the New Orleans Police Department and the student's parent or guardian shall be informed immediately. The employee shall not be allowed to return to his or her *1114 assignment pending a hearing at the Superintendent's level.
Three steps and levels are set forth for a hearing:
Level A Hearing Procedure: a conference is initiated by the immediate supervisor to advise the employee of the complaint. The employee may respond and present information on his or her behalf. Should the supervisor determine that further disciplinary action is to be pursued, he or she shall submit a written request for a hearing with the Division Head within five working days of the Level A conference. A copy of the hearing request, stating the nature of the complaint and the alleged victim's name and age, and copies of documentation submitted in connection with the complaint shall be provided to the accused.
Level B Hearing Procedure: the Division Head convenes a conference with the supervisor and accused. Should the Division Head conclude that further disciplinary action is required, a written request for a formal hearing shall be forwarded to the Superintendent or his designee within five days of the Level B conference, with a copy to the accused.
Level C Hearing Procedure: the Superintendent implements a short-term suspension without pay, that remains in force pending the outcome of the hearing. The conference must be held within twenty working days from the date of the suspension.
Hearings for morals offenses and aggravated battery are held at Level C.
Hearings conducted by the Superintendent on a recommendation for dismissal have the following form: (a) an opening statement by each party; (b) presentation of the Superintendent's witnesses and exhibits; (c) presentation of the accused's witnesses and exhibits; (d) rebuttal by each party; (e) a closing statement by Superintendent; and (f) a closing statement by accused. The parties have the right of cross-examination, and all questions of the admissibility of evidence are determined by the Superintendent. At the conclusion of the proceedings, the Superintendent reviews the evidence and prepares a written recommendation to the Board, with a copy furnished to the accused. If the Superintendent finds the evidence supports the charge, the Superintendent submits a recommendation for dismissal of the accused which becomes effective upon Board approval.
A memorandum dated 20 May 1996 to Appellant from Marino, Live Oak Principal, requesting an administrative conference on 24 May 1996 concerning the N.F. incident.
A letter dated 7 June 1996 from Marino to Appellant acknowledging his review of Appellant's memorandum of 29 May 1996 and setting a conference on 12 June 1996 concerning the N.F. incident.
A letter dated 26 June 1996 from Marino to Appellant memorializing the conference held on 20 June 1996, concluding that the slapping incident did take place and referring the matter to Coman, Area 1 Associate Superintendent, for disciplinary action.
A letter dated 26 July 1996 from Coman to Appellant advising of conference at Live Oak on 1 August 1996.
A letter dated 15 August 1996 from Coman to Appellant advising him of the administrative hearing held 6 August 1996 at which Appellant and his attorney were present; advising him of nature of charge, and the testimony of three witnesses, N.F., custodian Darren Stacker (Stacker) and student Martin; advising him of a review of written testimony from Mahogany Butler, Mrs. A. Scherer (Scherer) and Ms. J. Davis, all of which supported the charges brought by Marino; advising him that the review of Appellant's personnel file contained documents of reprimand for similar past incidents; advising him of Coman's recommendation that Appellant's employment be terminated.
A letter dated 23 September 1996 from Cynthia Williams, Executive Assistant to the Superintendent, to Appellant *1115 advising him of receipt of Coman termination recommendation and scheduling a conference in accordance with Board policy and procedures for 26 September 1996.
A certified letter dated 7 October 1996 from Samuel Scarnato (Scarnato), Hearing Officer, rescheduling Superintendent level administrative appeal conference for 14 October 1996 at the request of Appellant's new attorney and advising Appellant that this was the third delay in the conference setting and that the hearing officer would not look favorably on any request for a further continuance.
A letter dated 11 October 1996 from Appellant's attorney to the hearing officer adding the following names to his witness list: Brenda Chapital, John Empy, Louise Gordon, Dr. Lindsey Moore, Rita Severan, Raynard Smith and Emma Turner.
A letter dated 11 October 1996 from Appellant's attorney to Scarnato acknowledging the change in time and place for the administrative appeal conference and acknowledging Appellant's obligation to arrange for the appearance of all witnesses that he would call.
A letter dated 11 October 1996 from Scarnato to Appellant confirming the change of time and place of conference.
A letter dated 17 October 1996 from Scarnato to Appellant's attorney enclosing copies of documents submitted by the school administration at the administrative conference and documents submitted on behalf of Appellant with the request that the latter be copied and copies forwarded to Scarnato. (Scarnato asked for specifics concerning incidents mentioned in a letter from a trial court judge.)
A letter dated 22 October 1996 from Appellant's attorney to Scarnato advising that the aforementioned judge could not recall the name of the complainant but recalled that the incident occurred at Bell School, and advising that the judge was unable to obtain his original files, which had been assigned to another attorney who also was subsequently elected to a judgeship.
A letter dated 13 December 1996 from Scarnato to Appellant and approved by the Executive Assistant to the Superintendent on 19 December 1996, summarizing the findings and recommendation resulting from the 14 October 1996 administrative conference. This letter noted the following:
(a) Scarnato noted two previous reprimands in Appellant's record: a 28 June 1989 reprimand by an Area Superintendent based on Appellant's having provoked a student and having placed his hands on the student's shoulders forcing him to sit in his seat, directing that Appellant be placed in the evaluation cycle as to his performance in effective student discipline; and a 26 May 1994 reprimand by an Area Superintendent for Appellant's having struck a student, directing his principal to place Appellant in the evaluation cycle with improvement objectives to consist of improving his interpersonal skills.
(b) Scherer testified that both N.F. and an unknown number of students told her Appellant slapped N.F. across the face. It was unclear how many, if any, of the students witnessed the incident. Other testimony showed that N.F. was struck with sufficient force to cause redness and swelling about her eye and that Appellant's finger struck her eye causing redness in the white part of her eye. Appellant testified that during his supervision on the yard N.F. and another student were hitting each other and Appellant told them to stop. When the bell rang, N.F. was running after this student and Appellant put out his hand to stop her from running when she turned her body and his hand made contact with her face.
(c) Scarnato concluded that Appellant's explanation was not credible, and that he intentionally slapped or intended to make forcible bodily contact with N.F., in violation of School Board Policy # 4118.15R as it relates to corporal punishment/unreasonable *1116 use of force, despite two previous letters of warning.
(d) Scarnato advised Appellant that he was submitting the file to the Board's attorney for the purpose of preparing appropriate charges for Appellant's termination under the tenure law. The charges were to be presented to the Board at its next meeting.
An incident report attached to Scarnato findings. Also attached were file copies of material concerning incidents involving Appellant, that occurred in 1989 and 1994.
A letter dated 29 April 1997 from Holmes to the Board setting forth the three charges of willful neglect of duty brought against Appellant.
A certified letter dated 31 July 1997 from Wyatt V. Dejoie (Dejoie), Board Secretary, to Appellant advising him of the tenure hearing.
A 1 May 1997 Notice to Appellant of leave of absence.
A certified letter dated 8 September 1997 from Dejoie to Appellant notifying him of rescheduling of tenure hearing.
A letter of 22 September 1997 from Board counsel to Appellant's counsel containing the witness and exhibit lists.
The Board offered, in addition to the stipulated exhibits, the following:
A memorandum dated 20 May 1996 from Appellant to Coman reading in pertinent part:
Prior to ... May 17, 1996 ... Marino did not say anything to me with reference to this situation. I meet [sic] with him in his office on Thursday following the lunch period. No mention of anything concerning N.F. was mentioned to me.
Mr. Marino told me on Sunday when I spoke with him that two teachers had come to him on Thursday and informed him that he should talk with N. He also told me that on Thursday he telephoned Officer Roussell of the New Orleans Police Department and ... N.'s mother, but no conversation regarding this allegation was held with me. He also told me that he advised Mrs. F. of her options, A conference with he [sic] and her, a conference with she [sic] and I [sic], a conference with all three of us or she could telephone the police....
I was told on Friday by Mr. Marino that I had slapped N.F. on Thursday and Child Abuse had been called. I did not hear from Mr. Marino again until Sunday evening when he informed me that he had spoken with you and you directed him to tell me to remain home until I hear [sic] from you.
I have been calling for you so-that [sic] you can receive the benefit of hearing from me the facts of what took place on Thursday and how things have needlessly gotten out of hand.
THERE IS NO EVIDENCE OF CHILD ABUSE, BRUISES, SCRATCHES, MARKS OR ANY THING [sic] ELSE ON THIS CHILD BECAUSE THERE WAS NO ABUSE!
A memorandum dated 20 May 1996 from Appellant to Coman stating in relevant part:
On Thursday, May 16, 1996 at approximately 12:40 I was standing on [sic] the yard supervising the students who were at recess. I observed N.F. and another female student playing "the hitting game". I spoke to the girls by saying, "Stop that!" A couple of minutes later, I observed the girls continuing to hit one another.
Mr. Stacker, a custodian walked up to me and we began talking. Through the corner of my eye again I observed N. going after the other girl. At this point N. appeared to be angry. N. was fussing as she was walking behind the other girl and pulling her by the arm. The girls were only a few feet from where I was standing. Again, I repeated myself and said, "Stop the playing.", [sic] directly to N. because the bell had rung and the other girl was attempting to walk away and report to her line.

*1117 N. did not respond to my directive. As she passed I extended my hand to take her by the arm. N. turned her upper body away from me. She was still fussing at the other girl. As N. turned, my hand went from reaching for her arm to accidentally brushing her mouth. She then walked away and reported to her line.
N. is a very small child with reference to physical stature. My action was an attempt to stop her from fussing so feverishly, allow her the opportunity to regain self control, and line up, and report to her next class....
A memorandum dated 24 May 1996 from Marino to Appellant advising him of the charge that he had slapped a Live Oak sixth grade student, N.F., resulting in the school officials having to call NOPD and Child Abuse, and enclosing statements by Marino, Stacker, N.F., C.M. (a seventh grade special education student at Live Oak), M.B. (N.F.'s cousin), J. Davis and Scherer. These statements essentially supported N.F.'s view of the incident. Stacker and M.B. were named as witnesses in the Report of Student Personal Injury dated 17 May 1996.
Stacker's statement includes the following comments:
I was coming from the dumpster emptying trash when a student approached me and began to relay an incident to me involving a possible fight between students. In the meantime Mr. Chapital approached us and said, "I know you all are not going to stand up in front of me and argue, I know your asses aren't going to stand in front of me and argue, you are going to act like your ass don't hear me." Then Mr. Chapital slapped N.F. with his right hand on the left side of her face. His right index finger also hit N. in the eye. Mr. Chapital then said, "Get your Mother F****** ass in line, you get the F*** out of my face. You son of a bitches stand up there and fuss in front of my face and disrespect me, I don't play that s***. When I say something that's what I mean." I then walked away, saw Mr. Marino, and told him what happened.
According to M.B.'s statement, her cousin, N.F., and J.F. were fussing, but not fighting. M.B. observed Appellant walk up to the girls and tell them to go to their lines. The girls did not move immediately, and M.B. heard Appellant say, "I'm going to slap the s*** out of you." She then saw him slap N.F. with his right hand on the left side of her face.
A memorandum dated 29 May 1996 from Appellant to Marino questioning the accuracy of statements given by N.F., Scherer, Stacker and Marino.
Appellant submitted exhibits relating to the charges as well:
Statements from two persons having knowledge of special education student, C.M., to the effect that his testimony would be unreliable.
A memorandum dated 5 December 1995 from Marino to Appellant generally complimenting him on the performance of his duties.
A letter dated 5 March 1990 to Area III Superintendent from the union's Building Committee outlining acts of physical violence and verbal abuse against teachers, custodians and administrators, including Appellant, at Bell School.
A letter of recommendation dated 20 January 1993 from Brenda Cade, Appellant's former principal.
A letter dated 2 October 1996 from Terronita Hampton, giving her opinion that the movement against Appellant was motivated by students and parents who complained of his strict enforcement of the Board's "Project Respect" and zero tolerance for violence.
A transcript of the Superintendent Level Administrative Appeal Conference held on 14 October 1996.
N.F. testified at the 16 October 1997 tenure hearing, supporting the charge against Appellant. However, she denied having heard Appellant use "curse words" *1118 at the time of the incident. She was questioned by counsel and by the Board members who were present.
Mrs. F. also testified that on the evening of the incident she noticed her daughter's face was puffy, and this puffiness lasted until the next day. The child's eye was red as well.

STANDARD OF REVIEW
Generally, the standard for reviewing a school board's decision after a tenure hearing has two parts: (1) determination of whether the hearing was conducted in accordance with the formalities of the tenure law, and (2) determination of whether the decision is based upon "substantial evidence". Coleman v. Orleans Parish School Board, 93-0916, 94-0737, p. 3 (La.App. 4 Cir. 2/5/97), 688 So.2d 1312, 1314, writ denied 97-0622 (La.4/25/97), 692 So.2d 1087. "Substantial evidence" is evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Coleman, at p. 4, 688 So.2d at 1315, citing Wiley v. Richland Parish School Board, 476 So.2d 439, 443 (La.App. 2 Cir.1985). Great deference should be given to a board's factual findings and credibility determinations. Reasons for dismissal are largely in the sound discretion of the school board. Thus, a court should not reverse a school board's judgment in a case absent a clear showing of an abuse of discretion. Id.
We are mindful also of the fact that the Teacher Tenure Act is designed to protect teachers and should be construed liberally to effectuate that purpose.
FIRST ASSIGNMENT OF ERROR: The trial court erred in failing to allow the introduction of the Board's Staff Protection Policy, No. 4142.
Board Policy No. 4142, entitled "Staff Protection", provides in pertinent part:
In the event a student threatens physical injury to another student, member of the school staff or school property, or if a situation arises which threatens physical injury, school personnel must immediately report the fact to the principal for appropriate emergency action which may include, but is not limited to, calling for the assistance of police or school security personnel.
Nothing in the record indicates that Appellant complied with this policy at the time of the incident.
The policy also provides:
A staff member is authorized to employ reasonable and just physical restraint, without advance notice to a superior, when such action is necessary for self defense or the protection of others. When so employed, such physical restraint shall not be considered a form of corporal punishment. [Emphasis added.]
The Appellant was not charged with having employed unreasonable and unjust physical restraint.
It is far from clear that this policy was relevant to the incident in question or would require a different result from that found by the Board and confirmed by the trial court. We note that the policy could well be characterized as an "ordinance enacted by any political subdivision of the State of Louisiana" within the meaning of LSA-C.E. art. 202B (1)(c). If treated as an ordinance, the policy is a proper subject of judicial notice. However, even if the trial court erred in failing to admit the policy, its lack of relevance to the N.F. incident and the weight of the evidence in this case render the error harmless.
We agree with Appellant that, under ordinary circumstances, he would have had the right to produce new evidence at the trial court level. However, in this case, the record clearly demonstrates that Appellant did not object to the pretrial order's provision that only those exhibits and that evidence admitted at the Board's tenure hearing would be considered by the trial court. It was incumbent on Appellant to have made clear his intention to rely on Policy 4142 prior to the trial court's having *1119 entered the scheduling order. Furthermore, Appellant did not seek supervisory review of the trial court's action granting the Board's Motion to Strike this and other evidence.
We note that Appellant did not plead this policy as a defense before the Board nor did he introduce the policy in his lengthy presentation at the Board's tenure hearing. On 22 June 1999, the trial court's scheduling order was entered by the trial judge, providing that "[b]y agreement of the parties and the Court", "[n]o further evidence other than the transcript of the tenure hearings and the exhibits used therein shall be submitted to the court." In this State, the word "shall" is mandatory. We have examined the witness and exhibit lists submitted by Appellant to the trial court, and do not find Policy 4142 thereon.
Pretrial conferences reduce unnecessary proof of inconsequential facts at trial, and prevent the creation of traps or surprises that one party might spring on another. Because the conference is an invaluable tool for promoting a fair and speedy trial, pretrial orders should be strictly adhered to by the parties. Benware v. Means, 99-1410, p. 6 (La.1/19/2000), 752 So.2d 841, 845. La. C.C.P. art. 1551A(4) and (7) provide for the trial court's discretion to consider proof, stipulations regarding authenticity of documents, and identification of witnesses, documents and exhibits. La. C.C.P. art. 1551B provides that the trial court shall render an order reciting the action taken at the pretrial conference, which order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.
We find no abuse of the trial court's refusal to allow introduction of an exhibit whose introduction would have violated the trial court's order managing the course of the trial. Furthermore, even if the Policy was admissible under LSA-C.E. art. 202B(1)(c), the trial court's error in failing to admit it was harmless. Therefore, this assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The trial court erred in failing to address the application of the concept of "willful neglect of duty" in the context of Appellant's duty to maintain order on the school campus.
The legislature provides for teacher tenure in general at LSA-R.S. 17:441 et seq. (Sub-Part A) and in particular with respect to an Orleans Parish teacher at LSA-R.S. 17:461 et seq. (Sub-Part B). Appellant contends that the notice provisions of Sub-Part A should apply to him, alleging that when LSA-R.S. 17:462 "was amended, the act specifically stated that it should no way affect or repeal section 443." We find no support for this contention in the legislative history.
According to the "History and Source of Law" comment, Sub-Part A and Sub-Part B were enacted separately as Acts 1922, No. 100 § 48 and Acts 1922, No. 100 § 66, respectively. Sub-Part B applied by its terms to Orleans Parish teachers and Sub-Part A applied to teachers in the remainder of the State. Sub-Part A was amended by Acts 1936, No. 58 § 1, Acts 1944, No. 250 § 1 and Acts 1946, No. 297 § 1, par. 1. Sub-Part B, pertaining only to Orleans Parish teachers, was amended by Acts 1934, No. 164 § 1, Acts 1936, No. 79 § 1 and Acts 1944, No. 250 § 2, pars. 2, 3.
Acts 1980, No. 236 § 1 enacted LSA-R.S. 17:1331-1342, relative to the Louisiana Teaching Professions Practices Commission. Section 5 of Act 236 of 1980 contained a "Saved from Repeal" clause, making it clear that the Teacher Tenure Act (Sub-Parts A and B) was not repealed by the 1980 legislation. According to the "Saved from Repeal" Comment to both LSA-R.S. 17:441 et seq. and LSA-R.S. 17:461 et seq., Acts 1980, No. 236, section 1 provides in Section 5 of the Act:
All laws or parts of laws in conflict herewith are hereby repealed; however this Act shall neither affect nor repeal the provisions of R.S. 17:441 through R.S. 17:445, R.S. 17:461 through R.S. 17:464, ..., the Louisiana teacher tenure *1120 statutes. It is hereby declared that it is not the intent of the legislature to, in any manner, affect the teacher tenure laws in Title 17 by the enactment of this Act. If any provision of this Act is irreconcilable with any provision of said tenure laws the provisions of said tenure laws shall prevail over the provisions of this Act.
LSA-R.S. 17:1331 et seq., The Louisiana Teaching Professions Practices Commission, is not at issue in the case at bar. There is no evidence that it was intended to or did eliminate the distinctions between the notice requirements in Sub-Parts A and B of the Teacher Tenure Act.
Therefore, we conclude that the law applicable to the termination of this tenured Orleans Parish teacher is found in LSA-R.S. 17:461 et seq. Section 462 provides in pertinent part:
A. A permanent teacher shall not be removed from office except on written and signed charges of ... willful neglect of duty, ... and then only if found guilty after a hearing by the Orleans Parish School Board, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with the following:
(1) a copy of the written charges;
(2) A list of the names and last known addresses of all witnesses the board may or will use at the hearing;
(3) A copy of all documents the board will or may introduce during the course of the hearing.
The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection all of whom shall be heard by the board at the said hearing. At least fifteen days in advance of the date of the hearing, the teacher shall furnish to the school board the following:
(1) A list of the names and addresses of all witnesses the teacher may or will use at the hearing;
(2) A copy of all documents the teacher will or may introduce during the course of the hearing.
* * *
B. If a permanent teacher is found guilty by the school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, ... and ordered removed from office ..., the teacher may, not more than one year from the date of said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter....
Of the cases cited by Appellant in support of his contention that a more specific statement of the charges against him was required by LSA-R.S. 17:443, no case arose in the Parish of Orleans. Clearly, the legislature intended that the procedure to be employed with respect to teachers employed by the Orleans Parish School Board differed with respect to notice requirements from that employed by other city or parish school boards in this state. There is no evidence in the record and no allegation by Appellant that the Board failed to follow the provisions of LSA-R.S. 17:461 et seq., applicable by its own terms to "TeachersOrleans Parish." The record supports the trial court's finding that the "tenure hearing proceedings were conducted in conformity with law."
Willful neglect of duty is listed in LSA-R.S. 17:462 as one of three grounds for removing a tenured teacher employed by the Board. Coleman, supra at p. 4, 688 So.2d at 1315. A teacher is deemed to have some knowledge that his actions were contrary to school policy. This knowledge may be gained through warnings from one or more supervisors or from general knowledge concerning the responsibilities and conduct of teachers. Jurisprudence collected by the Coleman court led it to conclude that teachers may *1121 be dismissed for willful neglect of duty only for a specific action or failure to act that is in contravention of a direct order or identifiable school policy. Coleman, supra at p. 6, 688 So.2d at 1316.
The Board received evidence of Appellant's violation of its policy No. 4118.15R, prohibiting excessive force. There was also uncontroverted evidence that Appellant had received prior reprimands for improper physical contact with students and counseling and warnings from Coman and Marino concerning use of excessive force on students. Testimony of N.F. and of Stacker constitute substantial evidence that Appellant imposed impermissible corporal punishment on N.F. N.F. and her mother provided evidence of physical injury resulting from this improper contact.
The record clearly supports the trial court's finding that there was substantial evidence to support the Board's disposition.
THIRD ASSIGNMENT OF ERROR: The trial court erred in failing to require the Board to consider alternative punishment or discipline.
Appellant contends that the Board failed to consider alternative punishment because lesser alternatives were not provided by Board counsel. He argues that because the Board allegedly did not consider lesser discipline, the termination constituted an abuse of discretion, citing Jones v. Rapides Parish School Board, 634 So.2d 1197 (La.App. 3 Cir.1993). In that case, consideration of lesser discipline was not the issue. The court found an abuse of board discretion in the fact that the Rapides Parish School Board imposed suspension for one teacher and termination for another where both teachers had been shown to be guilty of the same infraction under similar circumstances.
The Third Circuit has interpreted LSA-R.S. 17:443, the statute governing appeals outside of Orleans Parish, as prohibiting a School Board ballot that limited the Board to deciding whether or not to terminate a tenured teacher because it removed the Board's authority to exact a lesser punishment. Rubin v. Lafayette Parish School Board, 93-473 (La.App. 3 Cir. 12/14/94), 649 So.2d 1003, writ denied 95-0845 (La.5/12/95), 654 So.2d 351. While the language of LSA-R.S. 17:443 and LSA-R.S. 17:462 B are similar in this respect, we note that in the Rubin case there was evidence, absent in the instant case, that the ballot was drafted and presented by the Board's attorney who despite objection voiced by the teacher declined to modify it to allow for alternative punishment. In the case at bar, no punishment was outlined in the resolution that had been prepared by Board counsel and approved by counsel for Chapital. No evidence in this record shows that the Board did not discuss fully the punishment appropriate to this assistant principal. Indeed, in light of the Appellant's continuing denial of culpability, it seems more likely than not that the Board would have been reluctant to place him in a classroom where the only witnesses to any future inappropriate behavior would be the children themselves. Given the concomitant issue of Board liability for future inappropriate acts, we cannot say that the Board abused its discretion in deciding not to impose the lesser punishment of demoting Appellant to a teaching position. Nor do we find any evidence that the Board did not consider suspension as an alternative punishment. Absent such evidence, Rubin is distinguished on its facts. Unlike the ballot form in Rubin, the Orleans School Board's resolution left blank an area in which the Board itself could write in any punishment it deemed appropriate.
We find nothing in the record to indicate that the Board did not consider lesser disciplinary actions for Appellant. Nor does the record support Appellant's contention that the Board acted arbitrarily in terminating his employment. The testimony and exhibits showed a pattern of improper physical contact with students and a history of reprimands for those actions. The contact in question was serious, and caused physical as well as emotional injury *1122 to N.F. We find no abuse of the Board's discretion to terminate Appellant's employment.
This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess the costs of this appeal against the Appellant.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, J., dissents with reasons:
The majority overlooks the language of Title 17, in addressing appellant's removal from his tenured teaching position. Title 17 clearly contemplates a lesser penalty than termination for tenured teachers disciplined by the school board.
La. R.S. 17:462(B) provides, in pertinent part:
If a permanent teacher is found guilty by the school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or immorality, or of being a member of or of contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the state of Louisiana, and ordered removed from office or disciplined by the said board, the teacher may, not more than one year from the date of said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. (emphasis added).
Furthermore, the "removal from office" provision in tenure law applies to demotion or reduction of salary as well as to discharge or dismissal. Brooks v. Orleans Parish School Board, 88-1813 (La.App. 4 Cir.1989), 550 So.2d 1267, 1273, writ denied, 553 So.2d 466 (La.1989); see also Rosenthal v. Orleans Parish School Board, 214 So.2d 203 (La.App. 4 Cir.1968), writ denied, 252 La. 963, 215 So.2d 130 (La.1968).
Under the provisions of Title 17, the school board has a duty to consider alternative punishment to termination when disciplining a tenured teacher for willful neglect of duty. See Rubin v. Lafayette Parish School Board, 93-473, p. 16 (La. App. 3 Cir 12/14/94), 649 So.2d 1003, 1016, writ denied, 95-0845 (La.5/12/95), 654 So.2d 351 (Ballot limiting the school board to decide whether or not to terminate tenured teacher, removed the board's authority to impose lesser punishment); Jones v. Rapides Parish School Board, 634 So.2d 1197, 1200 (La.App. 3 Cir.1993) (School board decision to terminate tenured teacher was arbitrary when the board had previously only suspended another tenured teacher for the identical offense). The school board's "authority to impose a disciplinary measure short of termination in a Tenure case is non-delegable." Rubin at p. 16, 649 So.2d at 1016.
In the instant case, the Orleans Parish School Board abused its discretion by approving an arbitrary resolution to terminate appellant without consideration of any lesser discipline. Appellant was a tenured teacher, and as such had acquired job protection. Although the school board claims appellant had committed prior acts of willful neglect of duty, appellant's act of striking a child, in an attempt to break up a physical altercation on school grounds, was a relatively minor offense and his first real violation of school policy. It is clear that appellant did in fact strike the student. This act was certainly a poor choice in judgment; however, it is not deserving of the maximum punishment allowed under Title 17.
Accordingly, I would reverse the judgment of the trial court, set aside the ruling of the Orleans Parish School Board, and remand to the Board for a hearing on an alternative lesser penalty.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] In order to protect the identity of the student, a juvenile, we use the student's initial.